## THE MARY ELIZABETH.[1]

## RUSSELL v. THE MARY ELIZABETH.[1]

## JACKSON v. SAME.[1]

*(Circuit Court, S. D. Alabama. June. 1885.)*

PILOT'S LIEN FOR WAGES.

Where a steam-boat is engaged in a regular trade, making short and frequent trips, and a pilot is always necessary, in fact required by the laws of the United States, it is to the interest of the boat and the pilots that contracts shall be made for stated terms of reasonable duration, and as such contracts are lawful, both parties should be bound thereby, and if the boat is bound a lien necessarily results. *The Wanderer*, 20 FED. REP. 655, followed.

Admiralty Appeal.

*L. H. Faith* and *W. S. McKinstry,* for libelants.

*G. W. Duskin,* U. S. Atty., for claimants.

PARDEE, J. These suits are brought to enforce a lien on contracts made by the master of said steam-boat Mary Elizabeth with the respective libelants to serve as pilots on the said boat for fixed terms of four and six months. Services were rendered under the contracts for over half of the fixed periods, when the owner discharged the libelants, with full payment to the time of discharge. The libelants demand compensation for the balance of the term for which they were respectively hired.

A pilot, being a person employed in the navigation of a vessel, is deemed a seaman, and his claim for wages is within the admiralty jurisdiction. See Cohen, Adm. 28, 234; *U. S.* v. *Thompson,* 1 Sumn. 170.

Pilots employed on steam-boats making regular trips on navigable rivers form a part of the crew. "The master being the person to whom the owners have intrusted the navigation of the ship, and some other powers in relation to it, he has power to make certain contracts, which it is not material here to enumerate, but among which is included that of hiring the other mariners. * * * In general, however, the master is left to hire the seamen at his own discretion, both at home and abroad; and unless the owner interferes, the engagements entered into by the master, within the scope of his agency, bind the owner to a performance." Curt. Mer. Seam. 15, 16.

The present cases show that the owner of the Mary Elizabeth, contemplating running his boat for the season in the Tom Bigbee river, employed T. J. Butler as master, and authorized and instructed him to employ pilots, and that, in pursuance of such instructions, Butler, as master, contracted with the libelants for the fixed terms aforesaid.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

The owner, though frequently present when the Mary Elizabeth was in port, according to his own evidence, made no inquiry as to the length of term for which the pilots were engaged, but paid the wages stipulated until he withdrew the boat from the Tom Bigbee river trade.

Under these circumstances I think it is clear that if there is any doubt as to whether the contracts made by the master with the libelants were within the scope of his agency and authority, and binding on the owners, there can be no doubt that the owner ratified the contract by silence and apparent acquiescence. The agency to contract with the libelants actually existed under the law of the case and the direction of the owner. It was therefore the owner's duty, being present, to have informed himself of the terms and conditions of the contract. Where an agency actually exists, the mere acquiescence of the principal may well give rise to the presumption of an intentional ratification of the act. Story, Ag. (4th Ed.) 256. It would not be equity to allow the principal to stand by and make no inquiries, and then avail himself of the contract made in his behalf, and, after part performance, repudiate the contract as one made without authority.

In the case of Jackson there is evidence to show that the owner and present claimant was fully informed before the rendition of any services of the terms of the contract, and further that he expressly ratified it at a later day; but as the evidence on these points is conflicting, I base my decision on the ground that the owner was silent when he should have spoken. In the case of *The Wanderer*, 20 Fed. Rep. 655, decided by Circuit Judge Woods, (Justice Bradley concurring,) it was said:

"The case made by the libel is an action by a seaman to recover his wages. The libelant had made a contract of service for one year. He performed part of the contract, and was ready and willing to perform the residue, but was prevented by the master of the vessel, who discharged him without cause. He sues to recover the balance due on his salary for the year. If he performed his duty while in the service of the vessel, and was ready and willing to perform it for the residue of his engagement, and was discharged without due cause, and was unjustifiably prevented from completing his contract, his rights are the same as if he had completed it. He is entitled to his wages for the whole year, and was entitled to sue for them on his discharge. He has been paid a part of his wages and sues for the balance. In the case of a contract for an ordinary seaman's wages, the lien should not, perhaps, be extended beyond a single voyage, as that is the usual time for which his engagement is made. But the case of a purser stands somewhat on a different footing. His connection with the vessel is generally more permanent than that of a common seaman. He represents to some extent the owners, and his qualifications are of such a character that a competent purser cannot usually be employed for a single trip. We therefore do not think an engagement of a purser for a year an unreasonable one, and such an engagement we think would be binding on the boat."

*The Wanderer* is a case directly in point with regard both to the contract and to the lien claimed in the present cases. Where a steam-boat is engaged in a regular trade, making short and frequent

trips, where a pilot is always necessary, in fact required by the laws of the United States, it is to the interest of the boat and the pilots that contracts shall be made for stated terms of reasonable duration, and, as such contracts are lawful, it would seem that both parties should be bound thereby; and if the boat is bound a lien necessarily results. To deny a lien for the enforcement of a contract beyond the voyages actually made, would be, in most instances, to bind one party to the contract, and not the other.

Decrees should be entered in both cases for the libelants.