## THE LUD KEEFER.

## WERLING et al. v. THE LUD KEEFER.

## KEEFER et al. v. WERLING et al.

*(Circuit Court of Appeals, Third Circuit. June 3, 1892.)*

SEAMEN'S WAGES—SHIPPING ARTICLES—PILOT—PLEADING.

If it is to be assumed that a pilot of a steam vessel, who is a licensed and sworn officer, is a "seaman," within the meaning of sections 4520, 4521, Rev. St., and that his hiring in consequence must be by shipping articles, yet he cannot, under these statutes, recover the highest rate of wages paid to any seaman for a similar voyage during the three months preceding his hiring, unless his libel avers or his proofs show that the vessel on which he was employed was of the burden of 50 tons or upwards. 49 Fed. Rep. 650, modified.

In Admiralty. Appeal from the District Court of the United States for the Western District of Pennsylvania. Decree modified.

*George C. Wilson,* (*David S. McCann,* on the brief,) for appellants.

*M. A. Woodward,* for appellees.

Before ACHESON and DALLAS, Circuit Judges, and BUTLER, District Judge.

ACHESON, Circuit Judge. This was a suit in admiralty, brought by John L. Werling and William S. Reno, pilots, against the steam towboat Lud Keefer, for the recovery of wages due them, respectively, for services as pilots on said vessel on a trip from Pittsburgh to Louisville and back, made in the month of June, 1891. The libel avers that the libelants were hired by the master, who was also a part owner of the boat, as pilots for a voyage on her from Pittsburgh, Pa., to Louisville, Ky., and back to Pittsburgh, and that they performed their duties in that capacity on the boat on said voyage "without agreement as to wages and payment of services, but upon the implied understanding that they (these libelants) would ask, charge, be paid, and receive the rate of wages and compensation of the most expert and capable, as they were, of steamboat pilots" upon the rivers Monongahela and Ohio, for such trip, and that, having performed the trip, they "were entitled to, and have claimed and demanded, wages and compensation for said services of two hundred and fifty dollars each." The libel, it is to be noted, does not at all suggest that there was any express understanding with respect to the rate of compensation to be paid to the libelants, or either of them, but the contrary is distinctly averred. The libel is really framed as upon a *quantum meruit.* That there was no specific stipulation as to the rate of wages to be paid to either of the libelants is plain upon the proofs. Now, the evidence establishes that the sum of $150 was the highest ordinary rate of wages paid competent and skillful pilots on such a boat as the Lud Keefer for such a trip as the libelants made on her, and that at the time the voyage here in question was made it was the usual rate of wa-

ges paid to such pilots as the libelants for such a trip; and we are entirely satisfied from the evidence that that sum was a fair rate of compensation to the libelants, respectively, for the services so rendered by them. But it appears from the proofs that in a single instance, and under peculiar circumstances, the sum of $250 was paid to a pilot for services on another steam towboat on a voyage from Pittsburgh to Louisville and back, during the rise in the rivers in the month of June, 1891; and the court below held that by virtue of the provisions of sections 4520, 4521, Rev. St. U. S., this exceptional payment fixed the standard of compensation for each of the libelants; and, accordingly, the court decreed that they each recover the sum of $250. The fourth assignment of error is to the effect that the court erred in holding that said sections were applicable to and controlled this case; and, in the view we take of the case, this is the only assignment we need consider. Section 4520 enacts:

"Every master of any vessel of the burden of fifty tons or upwards, bound from a port in one state to a port in any other than an adjoining state, * * * shall, before he proceeds on such voyage, make an agreement in writing or in print with every seaman on board such vessel, except such as shall be apprentice or servant to himself or owners, declaring the voyage or term of time for which such seamen shall be shipped."

And section 4521 provides:

"If any master of such vessel of the burden of fifty tons or upward shall carry out any seaman or mariner, except apprentices or servants, without such contract or agreement being first made and signed by the seaman, such master shall pay to every such seaman the highest price or wages which shall have been given at the port or place where such seaman was shipped, for a similar voyage, within three months next before the time of such shipping."

—And also shall be liable to a prescribed penalty. Now, if it be assumed that a pilot of a steam vessel, who is a licensed and sworn officer, is a "seaman," within the meaning of sections 4520, 4521, Rev. St., whose hiring must be by shipping articles, still, the fourth assignment of error must be sustained, for clearly, upon the case presented by this record, those sections had no application to the steamboat Lud Keefer. The libel here did not allege, nor was any proof adduced tending to show, that the Lud Keefer was a "vessel of the burden of fifty tons or upwards." The libelants, therefore, were in no position to claim the benefit of the provisions of the statute relied on. Neither their allegations nor their proofs brought them within the terms of sections 4520, 4521. We then modify the decree of the court below by reducing it in the case of each libelant to the sum of $150; and it is ordered that the costs of the appeal be paid by the libelants, (the appellees.)