## LENT TRAFFIC CO. v. GOULD.

(Circuit Court of Appeals, Third Circuit. October 31, 1924.)

No. 3163.

1. **Seamen ⟨key⟩7—Employer cannot avoid contract because articles were not signed.**

Rev. St. §§ 4520, 4523 (Comp. St. §§ 8311, 8314), are for the benefit of seamen, and place on the master the duty to see that articles are executed in compliance therewith, and while section 4523 declares a shipment without such articles void, the employer cannot avoid the contract on that ground, especially where services were rendered thereunder and paid for.

2. **Admiralty ⟨key⟩13—Time contract for pilotage services held within the admiralty jurisdiction.**

A contract for pilotage covering a stated period of time, during part of which the pilot may be engaged in performance of his duties in conducting the navigation of a vessel on her trip or voyage, and during part of which he may be awaiting orders of his employer for pilotage service, is within the jurisdiction of an admiralty court.

3. **Pilots ⟨key⟩11—Temporary disability of pilot held not to authorize deduction from wages under time contract.**

Disability of a pilot during a part of the time of his employment under a time contract held not to authorize deduction from his wages, where he was not called on for service during that time, and it did not interfere with performance of any duty required of him.

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Suit in admiralty by Frank A. Gould against the Lent Traffic Company. Decree for libelant, and respondent appeals. Modified and affirmed.

Lowrie C. Barton, of Pittsburgh, Pa., for appellant.

William R. Murphy and McIlvain, Murphy & Mohn, all of Pittsburgh, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge. This is an appeal by the respondent from a decree awarding the libelant damages in the sum of $1,971.44, with costs, in a suit in personam in admiralty to recover wages under an al-

leged maritime contract of employment as pilot. The assignments of error can be discussed with greater clarity by quoting here the opinion of the learned District Judge in full:

"This libel was filed to recover wages as pilot and superintendent of transportation. By amendment, the claim is for wages as pilot only. Under the pleadings and evidence, I find the following facts:

"On or about the 22d day of April, 1922, the respondent employed the libelant as a pilot to operate between Pittsburgh and Louisville, at the rate of $400 a month and expenses. The respondent was the owner of but one steamer, the James Moren, which made trips between Pittsburgh and New Orleans. Other pilots than the libelant were employed to pilot the boat between Louisville and New Orleans.

"There is a direct conflict in the evidence between the libelant and Mr. Lent, who made the contract of employment for the respondent, as to the term of employment; the former claiming that it was for a period of one year, and the latter claiming that the employment was from month to month—that is, for an indefinite period. But under the facts of the case I think this is not of special importance, as the term would continue until terminated by one of the parties, after reasonable notice. The libelant made two round trips between Pittsburgh and Louisville as pilot, beginning about April 25th and ending on the 10th or 11th of July, on which date libelant left the boat at Cairo, Ill., on her Southern trip, and went to Paducah, Ky., under directions of Mr. Lent. After his arrival in Pittsburgh, a day or two later, he continued to go to the office of the respondent, reporting to Mr. Lent, and looked after certain matters for the company.

"Under his contract of employment, he thus held himself ready to continue his work on the steamer whenever his services were demanded; and so he continued until the night of November 24th, when he received an injury from a fall, which kept him out of the office of the respondent until December 15th. From the latter date, he was not in the office until the first week of January, 1923. [While libelant, by letter dated July 20th, made a proposition to resign at the pleasure of the respondent, this proposition was not accepted, and the employment continued until January 8, 1923.] On the 18th day of August the respondent complained to libelant as to the amount of the expenses, and on that date libelant agreed to reduce his salary from $400 to $300 per month, until the 1st of November following. On July 25th the libelant was paid by respondent two months' wages, and on August 25th one month's wages—in all, $1,200.

"Numerous requests for money were made by libelant during the remainder of the period of employment, but these demands were not met. On January 8, 1923, plaintiff went to the office of respondent for money, but was told by Mr. Lent that he would have to wait until the boat was brought from Paducah, Ky.; the boat being there on the ways. Because respondent failed to make the payments due libelant, in accordance with the terms of his employment, he then and there gave notice of his resignation, and terminated the contract.

"It is apparent, from the testimony on both sides, that the contract did not contemplate services by the libelant on the steamer, except on such times as the boat was running between Pittsburgh and Louisville. It was not a contract for so much per trip, but by the month. The amount of actual employment on the boat rested with the respondent, and not with the libelant. He could not control the number of trips, or the time occupied in the navigation of the boat south of Louisville.

"[The position of respondent is that under sections 4520 and 4523 of the Revised Statutes (Comp. St. §§ 8311, 8314) the libelant is barred from recovery, which sections refer to contracts of employment between the master and the seaman. The penalty for the master's failure to have the crew sign shipping articles makes him liable under the statute for a penalty, plus the highest rate of wages for a similar voyage within three months before the time of shipment. These statutes are for the benefit of the seamen, and all intendments must be taken in their favor. If the master failed in his duty in not requiring libelant to sign shipping articles at the beginning of each trip to Louisville, both parties recognized the legality of the employment, one by rendering the services on the trips made, and the other by making payment for the same. The respondent cannot be heard to assert that shipping articles would not have been signed for subsequent voyages, had the boat been in operation.]

"[Libelant is entitled to judgment for the sum of $1,923.34, being the balance due him for salary to January 8, 1923, and also for the sum of $48.10, expenses for the months of July and August, 1922. A decree may be drawn accordingly.]"

The first assignment of error is to the

finding of fact in the first pair of brackets. We think the evidence amply supports that finding. While Mr. Lent, president of the respondent company, testified that he dictated a letter to the libelant accepting his resignation, there was no testimony that the letter was ever mailed or delivered to the libelant, and the libelant testified that he had never received such a communication. The conduct of the parties entirely supports the conclusions that they both considered the employment as continuing until the libelant resigned in January 8, 1924.

[1] The second assignment of error is to the conclusion of law in the second pair of brackets. The sections of the Revised Statutes cited in the opinion are as follows:

"Sec. 4520. Every master of any vessel of the burden of fifty tons or upward, bound from a port in one State to a port in any other than an adjoining State * * * shall, before he proceeds on such voyage, make an agreement in writing or in print, with every seaman on board such vessel except such as shall be apprentice or servant to himself or owners, declaring the voyage or term of time for which such seaman shall be shipped."

"Sec. 4523. All shipments of seamen made contrary to the provisions of any act of Congress shall be void; and any seaman so shipped may leave the service at any time, and shall be entitled to recover the highest rate of wages of the port from which the seaman was shipped, or the sum agreed to be given him at his shipment."

The apparent purpose of these statutes is for the protection and benefit of the seamen, and the duty is put upon the master to see that shipping articles in compliance with the statute are executed. The respondent, therefore, cannot set up the fault of its own master to avoid a contract of employment upon which both parties have acted, and for which, in so far as voyages were made, payment has been made in full recognition of the employment. In short, it cannot set up its own wrong as a defense. The intendment of the statutes is clearly to put the duty of making shipping articles upon the master before he proceeds upon the voyage, and, while section 4523 declares such shipment void, the privilege is conferred upon the seamen, not only of leaving the service at any time, but of recovering the highest rate of wages of the port from which he was shipped or the sum agreed to be given him at his shipment. It is quite evident, therefore, that the party who can avoid the contract of shipment, because shipping articles were not signed, is the sea-

man, and not the master or owner of the vessel. City of Fremont, 5 Fed. Cas. 761 No. 2746; The Theodore Perry, 23 Fed. Cas 914 No. 13,880; The Lizzie M. Dun (D. C.) 30 F. 927; The Pacific (D. C.) 23 F. 154.

While we have assumed, in passing upon the question raised by the second assignment, that a pilot, who is a licensed and sworn officer, is a "seaman," within the meaning of sections 4520 and 4523, Rev. St., whose employment must be by shipping articles, as this court assumed in The Lud Keefer, 51 F. 44, 2 C. C. A. 95, we do not find it necessary to decide that question, since we hold the assignment to be without merit.

Under the third assignment, directed to the conclusions in the third pair of brackets, and the fourth, assigning the decree as error, the appellant denies the jurisdiction of the court sitting in admiralty of the claim for pilotage upon the ground that, during the period covered by the libelant's claim, no services were rendered by him upon the respondent's vessel.

The usual suit in admiralty for pilotage is based upon a claim for fees for services rendered upon a voyage or part of a voyage, and not upon a contract of employment during a definite or indefinite period upon monthly wages or salary where the pilot is to be at the service of the ship whenever called upon. The respondent's objection is not to the jurisdiction of courts of admiralty to entertain suits for pilotage generally. It challenges the jurisdiction because in the instant case the claim for pilotage is based upon a contract by which, while the pilot was to conduct the respondent's vessel on all trips between Pittsburgh and Louisville, his employment and compensation was not by the voyage, but was for his services as pilot exclusively for the respondent whenever called upon to render services, either for a year, as contended by the libelant, or for an indefinite period, as contended by the respondent, at monthly wages. As to which of these alternative periods of employment was contracted for, we agree with the court below, was immaterial, as in either case the term of employment continued until it was terminated by the parties on January 8, 1923.

That pilotage is strictly maritime, and suits for pilotage on the high seas and waters navigable from the sea as far as the tide ebbs and flows, are within the admiralty and maritime jurisdiction of the United States, was early established. The Hope, Hobart v Drogan, 10 Pet. 108, 9 L. Ed. 363. And the jurisdiction in admiralty extended by the Act of February 26, 1845, 5 Stat. at Large, 726,

was upheld in The Genesee Chief, 12 How. 443, 13 L. Ed. 1058, where it was held that the admiralty and maritime jurisdiction of the United States under the Constitution is not limited to tide waters, but extends to all public navigable lakes and rivers, where commerce is carried on between different states or with a foreign nation.

[2] The question before us, then, is whether a contract for pilotage covering a period of time during part of which the pilot may be engaged in performance of his duties in conducting the navigation of a vessel upon her trip or voyage, and during part of which he may be awaiting the orders of his employer for pilotage service, is within the jurisdiction of the admiralty court. In other words, is the jurisdiction confined to pilotage services upon the water, and excluded in contracts of employment for such services?

In Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90, the rule was laid down that, as to contracts, the true criterion is the nature and subject-matter of the contract, as whether it is a maritime contract, having reference to maritime service or maritime transactions. A contract of marine insurance was there sustained as a maritime contract, and within the jurisdiction of the courts of admiralty. It had already been held in New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465, that a contract of freightment is a maritime contract and upon a libel in admiralty the inquiry is into the nature and subject-matter of the contract and whether the service is a maritime service. Commenting upon this case, Mr. Justice Bradley, in Insurance Co. v. Dunham, said:

"Jurisdiction in that case was sustained by this court, as it had previously been in cases of suits by ship-carpenters and materialmen on contracts for repairs, materials, and supplies, and by pilots for pilotage."

In Ex parte McNiel, 13 Wall. 236, 20 L. Ed. 624, a libel in personam was brought by one Banter, a duly licensed pilot, to recover against the owners of the bark McNiel the sum of money due under a statute of the state of New Jersey as half pilotage to the libelant as pilot who first tendered his services to the McNiel coming into port which had been refused. Although no service had been rendered, it was held that this was compensation under an implied contract for a maritime service, and that the District Court had jurisdiction to entertain the suit.

"A pilot is as much a part of the commercial marine as the hull of the ship and the helm by which it is guided." Ex parte McNiel, supra. See also Ex parte Hagar, 104 U. S. 520, 26 L. Ed. 816.

Applying the criterion stated in Insurance Company v. Dunham to the facts of the present case, we hold the contract before us was one having reference to maritime service and, therefore, was a maritime contract within the jurisdiction of the admiralty court upon a libel in personam.

[3] It is contended, however, that there should be no recovery for the period during which the libelant was disabled by his accident. It appears that, during the time of the disability of the libelant, there was no demand for active service upon his part. His time during the whole period of his employment was at the disposal of the respondent, and his sickness did not in any way interfere with the performance of his duties. We therefore agree with the court below that he was entitled to his pay at the rate agreed upon for the entire period for which claim is made in the libel.

The libelant incurred certain expenses in returning to Pittsburgh after having conducted the vessel upon its last down-river trip, to which he is entitled, because they were incurred under his pilotage contract. He cannot, however, recover for expenses not connected with pilotage service. Without enumerating the somewhat petty items, we find expenses amounting to $8.50 were included, having nothing to do with the pilotage contract.

The decree will therefore be modified, by the deduction of $8.50, and, as so modified, is affirmed.