John Joel ROGERS and Carolyn Cox Rogers, Plaintiffs-Appellants,

v.

EAGLE OFFSHORE DRILLING SERVICES, INC. and Midland Insurance Company, Defendants-Appellees.

No. 84–3161.

United States Court of Appeals, Fifth Circuit.

June 27, 1985.

Rehearing and Rehearing En Banc Denied Sept. 13, 1985.

Talbot, Sotile, Carmouche, Marchand & Marcello, Victor L. Marcello, Donaldsonville, La., for plaintiffs-appellants.

Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Camilo K. Salas, III, New Orleans, La., for Hall, Callender, intervenors.

Terriberry, Carroll, Yancey & Farrell, David B. Lawton, New Orleans, La., for Midland.

Before JOHNSON, JOLLY and HILL, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

John Joel Rogers and his wife, Carolyn Cox Rogers, brought a claim pursuant to the Jones Act, 46 U.S.C. § 688, seeking to recover damages for personal injuries he allegedly sustained as a "motorman" aboard the EAGLE M 101. He also brought a claim for unseaworthiness and for maintenance and cure under general maritime law. Mrs. Rogers brought her claim for loss of consortium. The jury rejected all of the claims presented to it. John and Carolyn Rogers ("Rogers") then filed a motion for a new trial, which was denied by the district court. After consideration of the various arguments Rogers raises on appeal, we affirm.

I

Rogers was employed by Eagle Offshore Drilling Services, Inc. (Eagle) as a "motorman" aboard the EAGLE M 101, an inland drilling barge. His job responsibilities included the maintenance of various engines and pumps aboard the rig, washing the clothes of the rig personnel, and substituting for "floorhands" during meal breaks.

One of the tasks a floorhand is required to perform is the cutting and slipping of the drill line.

The drill line, a cable used for lifting or lowering equipment within the rig, is occasionally replaced; the replacement procedure is known as "cutting and slipping." The operation is accomplished by removing new drill line from a spool-type drum located on the drill floor; the drill line is then passed through the "deadman," then the sheaves and next the travel block, before wrapping the line around a large hoisting drum known as the drawworks drum. The manual cutting and slipping procedure employed by the EAGLE M 101 requires the floorhand to measure the length of the drill line needed by counting the number of wraps to be taken off the drawworks drum; the floorhand then cuts and removes the line from the drum, and lowers it from the drill floor to the deck below. While he was manually lowering the drill line, Rogers' gloves stuck to the tar coating on the cable and he was "jerked," allegedly sustaining an injury to his back.

Rogers brought his personal injury claim pursuant to the Jones Act, alleging, *inter alia*, that Eagle was negligent in failing to use mechanical means for unrolling the drill line from the drum. Rogers also alleged that, under general maritime law, the vessel was unseaworthy because of the practice aboard the vessel of failing to use an available air hoist in unrolling the drawworks drum, and, second, the vessel was unseaworthy because a manual method, rather than a mechanical method, was customarily used in cutting and slipping the drill line.

Rogers also asserted a maintenance and cure claim. Eagle had discontinued Rogers' maintenance and cure payments on August 24, 1982, because it concluded that Rogers had reached maximum cure. The maintenance and cure payments to Rogers were resumed on July 20, 1983, after he returned to his doctor's care. Rogers' claim was that he was entitled to mainte-nance and cure for the period between August 24, 1982, and July 20, 1983, and to future maintenance and cure.

As we have noted, the jury rejected all of the Rogers' claims and the district court denied their motion for a new trial.[1]

II

On appeal, Rogers contends that the district court's instructions to the jury were erroneous on several bases. He alleges that the instructions were either incomplete, since they did not fully explain the issues presented, or were incorrect, since they did not accurately explain the governing law. Rogers' first basis for attacking the jury instructions is that they failed to include a charge that would have informed the jury that a vessel is unseaworthy if it employs an unsafe method of operation or work. Rogers argues that the failure to give this requested instruction forced the jury to focus on whether the vessel had proper and adequate equipment, and not on whether the vessel properly utilized this equipment.

The district court instructed the jury that "[a] claim of unseaworthiness is a claim that the owner of a vessel has not fulfilled his legal duty to members of the crew to provide a vessel reasonably fit for its intended purpose." The district court also instructed the jury that Rogers claimed the vessel was unseaworthy because he was not provided with an electric motor and spool to remove the drill line from the drum, and that the vessel owner's duty is not limited to the vessel itself, but extends to all of its parts, equipment and gear. Evidence introduced at trial indicated that the three methods used in cutting and slipping drill line were the manual method, which was employed by Eagle, the use of an air hoist, which was aboard the EAGLE M 101 but not used, and the use of an electric motor and spool. There was no electric motor or spool on the vessel. The district court did not give the requested

---

1. Mr. and Mrs. Rogers filed a joint notice of appeal. The briefs, however, do not raise any issues relating to Mrs. Rogers' loss of consortium.

additional instruction that using a manual, rather than mechanical, method could render a vessel unseaworthy, since it felt that the proper analysis on this point was whether the vessel was negligent (under the Jones Act) in permitting the floorhands to manually unroll the drum when a mechanical device (the air hoist) was available. Further, it concluded that its charge to the jury—that a vessel is unseaworthy if the vessel fails to provide a seaman with proper tools and equipment—adequately presented Rogers' unseaworthiness claim to the jury.

The concept of "operational negligence" that renders a vessel unseaworthy was discussed by the Supreme Court in *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). In *Usner,* the plaintiff was a stevedore engaged in unloading the vessel's cargo. He was injured when a sling used for unloading cargo struck him because the winch operator negligently lowered the sling too quickly. Neither before nor after this accident was there any problem with the winch. *Id.* at 496, 91 S.Ct. at 515. The Court stated:

> A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo or the manner of its stowage might be improper.

400 U.S. at 499, 91 S.Ct. at 517.

The Court held, however, that an isolated personal negligent act occurring on the vessel did not render the vessel unseaworthy. It further stated that to hold otherwise would eliminate the distinction between seaworthiness and negligence. 400 U.S. at 500, 91 S.Ct. at 518.

In a case factually similar to Rogers', *Luneau v. Penrod Drilling Co.,* 720 F.2d 675 (5th Cir.1983), we were faced with the question of whether an unsafe method of work could render a vessel unseaworthy. There, Luneau, an employee of Penrod

Drilling Company, allegedly sustained permanent injury to his back while pulling on a set of manual slips during drill-string tripping operations aboard a Penrod vessel. Luneau was required to use the manual slips rather than the air slips that were also on board. On appeal, he objected to the district court's instructions to the jury because they stated only that an unseaworthy condition may result from the improper use of otherwise seaworthy equipment, and did not further instruct the jury that utilizing an unsafe method of work may also constitute unseaworthiness.

We concluded in *Luneau* that an unsafe method of work may render a vessel unseaworthy, and such a charge is correct if it is justified by the evidence, citing *Adams v. United States,* 393 F.2d 903, 905 (9th Cir. 1968), and *Splosna-Plovba v. Garcia,* 300 F.2d 41 (9th Cir.1968). We further concluded, however, that such an instruction was not justified by the evidence in the case. As we explained: "The mere existence of an alternative method of work or of alternative equipment, whichever way the alternative use of the air slips is characterized, is insufficient of itself to render a vessel unseaworthy." We also felt that "Luneau's characterization of the *choice* of the use of manual slips instead of the air slips as an unsafe method is merely a choice of other words in an effort to present a novel issue." (Emphasis in original.)

The questions that we must decide, therefore, are whether the evidence justified the requested charge, and whether, considering the instructions as a whole, the jury was misled or could have misunderstood the issues presented to it. *See Ware v. Reed,* 709 F.2d 345, 349 (5th Cir.1983); *Coughlin v. Capital Cement Co.,* 571 F.2d 290 (5th Cir.1978). The instructions need not be perfect in every respect provided that the change in general correctly instructs the jury, and any injury resulting from the erroneous instruction is harmless. *Kyzar v. Vale Do Ri Doce Navegacai, S.A.,* 464 F.2d 285 (5th Cir.1972).

■ We hold that the evidence presented in this case does not justify the requested charge. There was no evidence to indicate that manually unrolling the drawworks drum was an unsafe method of performing the cutting and slipping operation. The evidence indicated that, with the exception of Rogers, no one had previously been injured by manually unrolling the drawworks drum. The evidence also indicated that the total weight of the cable that was carried by two roughnecks was sixty pounds. There is no evidence that this method of changing the drill line was so unsafe that utilizing the method rendered the vessel unseaworthy. Clearly a plaintiff must present sufficient evidence to raise a jury question whether a method of operation is unsafe, before a fully equipped vessel, with all its gear in good working order, can be rendered unseaworthy. Furthermore, the mere fact that an alternative method is available does not render a vessel unseaworthy. *See Luneau.*

■ We also reject Rogers' argument that the jury instructions were erroneous on a second ground. The substance of Rogers' claim was adequately presented and explained to the jury. The gravamen of Rogers' complaint was that unrolling the drill line manually rather than mechanically rendered the vessel unseaworthy. The court instructed the jury that a vessel is unseaworthy if it fails to provide the seaman with adequate tools and equipment. This charge adequately presented Rogers' unseaworthiness claim to the jury, which it rejected.[2]

### III

■ Rogers' next basis for attacking the jury instructions is that the district court improperly instructed the jury when it stated that the jury could find that the defendant's act or omission was the legal cause of the accident if *any* negligence of the defendant contributed to the plaintiff's harm. Rogers argues that while the district court properly instructed the jury under the Jones Act that all that is needed is slight *causation,* it also should have used the term "slight," rather than "any," negligence when explaining the degree of negligence necessary to establish liability. He argues that by failing to mention "slight" negligence, the jury was unaware that the standard for a Jones Act claim differs from that for an ordinary negligence claim.

The district court instructed the jury that:

> For purposes of this action, negligence is a legal cause of damage if it played any part, *no matter how small,* in bringing about or actually causing the injury or damage. So if you should find from the evidence in the case that *any* negligence of the defendant contributed in any way toward any injury or damages suffered by the plaintiff, you may find that such injury or damage was legally caused by the defendant's act or omission.

(Emphasis supplied.) Later, while instructing the jury on the unseaworthiness claim, the district court also stated: "Unlike the Jones Act claim, with respect to which the plaintiff may recover *if the alleged negligence is proved to be a slight cause of the injury sustained,* in order to recover on a claim of unseaworthiness it must be proved that the unseaworthy condition was a substantial cause of the injury...." (Emphasis supplied.)

As we have previously stated, "[t]he standard for reviewing a jury charge is not academic perfection, but rather, whether the instructions to the jury, taken as a whole, gave a misleading impression or inadequate understanding of the law." *Miley v. Oppenheimer & Co.,* 637 F.2d 318 (5th Cir.1981). A review of the district court's charge to the jury indicates that the district court adequately explained to the jury the lesser standard of negligence needed to establish liability under a Jones Act claim. The lesser standard of care was not only explained to the jury in instruc-

---

**2.** The district court also instructed the jury that if it found Eagle was negligent in failing to use the air hoist or an electric motor, Rogers could recover damages for the personal injuries he allegedly sustained. The jury also rejected this theory of recovery.

tions regarding the Jones Act claim, but it also was emphasized when instructions were given on the unseaworthiness claim. Accordingly, we reject Rogers' arguments, and hold that the instructions, when considered in their entirety, were clear and that the jury could not have been misled as to the proper standard of law to be applied.

## IV

Rogers' final attack on the jury instructions is that they are erroneous because the jury was not given a requested instruction that in an unseaworthiness case, the general practice of an industry is not a measure of prudence, and because the district court did not further instruct the jury that the fact that an employer follows a customary method of work used in the oil industry does not necessarily mean that a ship is seaworthy. Rogers argues that he was prejudiced by the court's failure to give this instruction. He asserts that the jury might have reasoned that the vessel was seaworthy because it followed a practice widely used in the oil industry.

The district court gave the following instructions to the jury regarding the owner's duty to provide a seaworthy vessel:

> The owners' duty under the law to provide a seaworthy ship is absolute. The owner may not delegate the duty to anyone. If he does not provide a seaworthy vessel, then no amount of due care or prudence excuses him, whether he knew or should have known of the deficiency. If, therefore, you find that the vessel was in any manner unsafe or unfit, and that such condition was a legal cause of damage to the plaintiff, then you may find that the vessel was unseaworthy and the shipowner liable, without any reference to the issue of negligence of the defendants or any of its employees.

The evidence introduced at trial indicated that there were three alternative methods currently and widely used for unrolling the drill line: the use of an air hoist, the use of an electric motor and spool, and performing the task manually. Although one of Rogers' witnesses testified that the EAGLE was the first vessel on which he was employed that used the manual method of unrolling the drill line, the evidence did not establish that any particular method was the custom of the industry.

■ We have carefully considered Rogers' argument, but fail to see how he was prejudiced by the district court's failure to give this additional instruction. First, the evidence did not demonstrate that there was an established custom in the industry; therefore it is unlikely that the jury focused on any one method as furnishing the proper measure of prudence. Second, the district court did not instruct the jury that it should look to the methods employed in the industry for cutting and slipping the drill line in determining whether the vessel was seaworthy. Rather the district court informed the jury that a vessel was unseaworthy if the vessel was unsafe or unfit and that the duty to provide a seaworthy vessel is absolute. Finally, Rogers does not cite any cases in which the failure to give the instructions he requested here was error. The district court did not err in denying Rogers' requested instruction.

## V

Rogers argues that he is entitled to maintenance and cure payments for the period from August 17, 1982, the date his maintenance and cure payments were discontinued, to July 20, 1983, the date the payments were resumed. Eagle paid Rogers maintenance and cure from the date of his leaving the service of the vessel until August 1982, when he was discharged by his treating physician. Eagle resumed the payments after Rogers returned to his doctor in June 1983 complaining of additional back problems and his doctor determined that he would have to undergo additional surgery. He argues that the jury verdict rejecting his claim to maintenance and cure during this period was against the clear weight of the evidence, and that the district court erred in failing to grant a new trial on this question. Rogers advances no other arguments challenging the jury's verdict on this issue.

The district court considered Rogers' claim for maintenance and cure for the period from August 17, 1982, to July 20, 1983, in Rogers' motion for a new trial, but stated that although it could grant a new trial if the verdict was against the clear weight of the evidence, *see Reeves v. General Foods Corp.,* 682 F.2d 515 (5th Cir. 1982), it was not convinced that the jury's verdict was incorrect. On appeal we may not disturb that holding of the district court unless there was a clear abuse of discretion. *International City Bank v. Morgan Walton Properties,* 675 F.2d 666 (5th Cir.1982); *Massey v. Gulf Oil Corp.,* 508 F.2d 92 (5th Cir.1975).

 There is ample evidence in the record to support the jury's verdict. After Rogers was released from treatment by his doctor, he sought employment in the oil industry, and he was engaged in carpentry work which included the building of an addition to a house. He also certified to the State of Mississippi, in his application for unemployment benefits, that he was medically capable of working. Clearly, the jury's verdict is supported by the evidence and the district court did not abuse its discretion by denying Rogers' motion for a new trial.

## VI

 Rogers' final argument is that he is entitled to future cure. The district court directed a verdict on this issue in favor of Eagle since it found that no evidence had been introduced to establish to what extent, if any, future cure was needed. The Supreme Court has stated that the award of future cure "should be of a kind and for a period which can be definitely ascertained," *Salem v. United States Lines Co.,* 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962), and should not be awarded when the amount of future cure is nothing more than mere speculation. Rogers' counsel conceded in his argument to the district court that any jury award would be mere speculation. In view of the lack of evidence, and counsel's concession, we hold that the district court properly directed a verdict against Rogers on this issue.

## VII

We have carefully considered the various arguments raised by Rogers, but have not been persuaded by any of them. Accordingly, the district court is

AFFIRMED.