Helen Ehret **BACH**, Eugene G. Bach, III, Janet B. Lashley, Plaintiffs–Appellants,

v.

**TRIDENT STEAMSHIP COMPANY, INC., et al., Defendants–Appellees.**

No. 89–3298.

United States Court of Appeals, Fifth Circuit.

Dec. 2, 1991.

Mark W. Smith and Gregory F. Gambel, New Orleans, La., for plaintiffs-appellants.

O'Neill, Eichin, Miller & Breckinridge and Robert H. Murphy, Kenneth J. Servay and Thomas D. Forbes, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants-appellees.

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before BROWN, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This cause has been remanded to us by the Supreme Court — U.S. ——, 111 S.Ct. 2253, 114 L.Ed.2d 706, for reconsideration in light of *McDermott International, Inc. v. Wilander,* 498 U.S. ——, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). The Court in Wilander concluded that a maritime worker need not aid in the navigation of a vessel to be a seaman. That holding, however, does not affect this court's conclusion that Bach was not a seaman. We did not base our decision on Bach's seaman status on the relationship of his duties to navigation. Indeed, this issue was never in doubt. Instead, we concluded that Bach was not a seaman because he was not permanently assigned to any particular vessel or fleet of vessels.

Because the rule announced by the Supreme Court in *Wilander* has no effect on our earlier conclusion, we reinstate our previous judgment. *Bach v. Trident S.S. Co.,* 920 F.2d 322 (5th Cir.1991).

The judgment of the district court is

AFFIRMED.

JOHN R. BROWN, Circuit Judge, concurring/dissenting.

I concur with the panel that, following the granting of certiorari and vacation of the Fifth Circuit's Order of Affirmance, the Supreme Court's remand for reconsideration in light of *Wilander*[1] does not either afford an answer to our case or offer up any decisive guide to this Court. So the problem remains: is a state-required compulsory pilot aboard an ocean-going vessel a Jones Act seaman?

Consequently, I continue in my dissent to the panel's holding that such a pilot, as a manner of law, is not a Jones Act seaman.

Although *Wilander* turns out not to be the decisive guide, what it does say is of demonstrable vitality, affording undeniable support to the views I set forth so forcibly in my initial dissent.[2]

First, who is a seaman under the Jones Act? *Wilander*'s answer is positive:

The Jones Act does not define 'seaman.' Neither does The Osceola; it simply uses the term as had other admiralty courts. We assume that the Jones Act uses 'seaman' in the same way.... The Jones Act, responding directly to The Osceola, adopts without further elaboration the term used in The Osceola. Moreover, 'seaman' is a maritime term of art. In the absence of contrary indication, we assume that when a statute uses such a term, Congress intended it to have its established meaning.

*Wilander,* 498 U.S. at ——– ——, 111 S.Ct. at 810–11, 112 L.Ed.2d at 874.

This led the Court as "our first task" to determine who was a seaman under the general maritime law when Congress passed the Jones Act. *Id.* 498 U.S. at ——, 111 S.Ct. at 811, 112 L.Ed.2d at 874.

Tracing the numerous Nineteenth Century cases, broadening seaman status to many not engaged in the *navigation* of a vessel, the Court emphasized Justice Story's decision, sitting on circuit in *United States v. Thompson,* 28 F.Cas. 102 (C.C.D.Mass.1832) (No. 16,492):

A cook and steward are seamen in the sense of the maritime law, although they have peculiar duties assigned them. So a *pilot,* a surgeon, a ship-carpenter, and

---

1. *McDermott Int'l., Inc. v. Wilander,* 498 U.S. ——, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).

2. 920 F.2d 322, 327–33.

a boatswain, are deemed seamen, entitled to sue in the admiralty.

*Wilander,* 498 U.S. at ——, 111 S.Ct. at 811, 112 L.Ed.2d at 875 (emphasis added).

Acknowledging it to be the leading admiralty treatise, the Court then quoted from E. Benedict, The American Admiralty § 278 at 158 (1850):

> Masters, mates, sailors, surveyors, carpenters, coopers, stewards, cooks, cabin boys, kitchen boys, engineers, *pilots*, fireman, deck hands, waiters,—women as well as men,—are mariners.

(Emphasis supplied.)

Then Judge, subsequently Justice, Brown, later the author of *The Osceola,* stated:

> [A]ll hands employed upon a vessel except the master, are entitled to a [seaman's lien for wages] if their services are in furtherance of the main object of the enterprise in which he is engaged. *The Minna,* 11 F. 759, 760 (E.D.Mich. 1882).

*Wilander,* 498 U.S. at ——, 111 S.Ct. at 812, 112 L.Ed.2d at 876.

Quoted with approval was another ancient authority M. Cohen, Admiralty 239 (1883):

> [A]ll persons employed on a vessel to assist in the main purpose of the voyage are mariners, and included under the name of seaman.

*Wilander,* 498 U.S. at ——, 111 S.Ct. at 813, 112 L.Ed.2d at 876.

All this led the Court in *Wilander* to conclude that:

> [A]t the time of ... the passage of the Jones Act ... [i]t was only necessary that a person be employed on board a vessel in furtherance of its purpose.

*Wilander,* 498 U.S. at ——, 111 S.Ct. at 813, 112 L.Ed.2d at 877.

> The key to seaman status is employment-related connection to a vessel in navigation.
>
> In this regard, we believe the requirement that an employee's duties must 'contribut[e] to the function of the vessel

or to the accomplishment of its mission' captures well an important requirement of seaman status ... but a seaman must be doing the ship's work.

*Wilander,* 498 U.S. at ——, 111 S.Ct. at 817, 112 L.Ed.2d at 882.

Declaring that at the time of *The Osceola,* maritime law did not require that a seaman aid in navigation, the Court stated:

> It was only necessary that a person be employed on board a vessel in furtherance of its purpose.

*Wilander,* 498 U.S. at ——, 111 S.Ct. at 813, 112 L.Ed.2d at 877.

The Court then concluded that:

> The Jones Act established no requirement that a seaman aid in navigation.

*Wilander,* 498 U.S. at ——, 111 S.Ct. at 813, 112 L.Ed.2d at 877.

I am indebted to Judge Brotman, United States District Judge, New Jersey, for his additional historical precedents on the pre-Jones Act definition of seaman in his decision according seaman status to a compulsory pilot injured by a faulty accommodation ladder while the vessel was underweigh. *Evans v. United Arab Shipping Co.,* 767 F.Supp. 1284 (D.N.J.1991). These include *The Mary Elizabeth,* 24 F. 397 (C.C.S.D.Ala.1885); *Wilson v. The Ohio,* 30 F.Cas. 149, 150 (C.C.E.D.Pa.1834) (No. 17,-825) (pilot entitled to sue in admiralty for wages); *The Lud Keefer,* 51 F. 44 (3d Cir.1892).

Ironically, on *Wilander's* reading of *The Osceola,* holding No. 2,[3] a pilot, having a maritime lien to recover pilotage fees, would have a maritime lien by which to recover damages caused by an unseaworthy Jacob's ladder. But under the Fifth Circuit decision, for the very same injury caused by negligence, not unseaworthiness, there would be no recovery as a Jones Act seaman.

Demonstrating that pre-1920 pilots were seamen, my initial dissent, 920 F.2d at 327, details how Congress and the Supreme Court each has authoritatively determined the critical role of a compulsory pilot and his indispensable importance in the naviga-

---

**3.** *Wilander,* 498 U.S. at ——, 111 S.Ct. at 810, 112 L.Ed.2d at 873.

tion and movement of a vessel in navigation. *See Cooley v. Board of Wardens*,[4] and the enactment by Congress of August 7, 1789, permitting the continued vitality of state-compulsory pilotage laws. Much later, *see Bisso*.[5]

A fair reading of congressional actions and Supreme Court decisions support the views I emphasized:

Pilotage has been the subject of immediate legislative concern and action; by it Congress, in recognition of the indispensability of pilots, has constitutionally authorized state laws compelling, under pain of criminal sanction, the use of state licensed pilots on vessels under Registry; the presence of a licensed pilot is so important that the law of unquestioned authority as declared by the Supreme Court holds the pilot in supreme command over master and crew so that the pilot's orders can only be countermanded in the face of obvious, glaring incompetence and neglect; the failure to have on board a compulsory pilot subjects the vessel to substantial civil liabilities.

920 F.2d at 331.

So indispensable to an ocean-going vessel under Registry in Louisiana waters [6] is the presence of a state-licensed pilot that the vessel lawfully cannot move in commerce beyond a single meter without a compulsory pilot aboard in supreme command of the vessel.

The fact that such a person has been the subject of congressional action and extended treatment by the Supreme Court concerning the essential role and responsibility of a pilot, and now recognized by the Court as a seaman in the general understanding of American maritime law, as of the time of the 1920 enactment of the Jones Act, should end the inquiry. With this historical background and the absolute indispensability of the pilot in the actual navigation and movement of the vessel, this combination of circumstances calls for at least special recognition of the unique status of this seagoing [7] functionary. For such pilot, the 1920 congressional purpose to make him a seaman surely was not abandoned by its intent in the enactment of the Longshoremans and Harbor Workers' Compensation Act [8] (LHWCA) in 1927.

I must continue in my dissent.[9]

---

**4.** 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1852), *Bach* dissent n. 7 and related text.

**5.** *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 93–94, 75 S.Ct. 629, 634, 99 L.Ed. 911, 919 (1955).

**6.** *See* La.Rev.Stat.Ann. §§ 34:995, 1002 (West 1985); La.Rev.Stat.Ann. §§ 34:1002.1, 1009 (West Supp.1991).

**7.** A pilot is exposed to all of the perils of a seagoing member of the crew. Unlike, for example, a longshoreman handling cargo in or out of a vessel at the dock or a repairman in the confines of a shipyard, the pilot bears all the risks of those who put to sea, fire or explosion following a collision, collapse or failure of a Jacob's ladder while the vessel is underweigh or the like.

As *Evans, supra,* reflects, the pilot, as customary, was disembarking while the vessel was underweigh. In many harbors the pilot joins or leaves the vessel in the offshore sea.

**8.** The Longshoremans and Harbor Workers' Compensation Act (LHWCA) of March 4, 1927,

44 Stat. 1424, 33 U.S.C. § 901 *et seq.*, explicitly excludes from coverage, "a Master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G) (1986).

**9.** If I am correct that this time-honored, exclusively maritime functionary is, and always has been, an indispensable member of the ship's company and thereby covered by the Jones Act, the contention that, by Part III, 920 F.2d at 333, I agree there is insufficient proof of negligence and causation is not supportable in light of *Ferguson v. Moore–McCormack Lines,* 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957) quoting *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), and this Court's frequent characterization that the Jones Act standard of negligence and causation is *"featherweight"*. *See*, e.g., *Smith v. Trans–World Drilling Co.,* 772 F.2d 157, 162 (5th Cir.1985); *Rogers v. Eagle Offshore Drilling Services, Inc.,* 764 F.2d 300, 304–05 (5th Cir.1985); *Landry v. Oceanic Contractors, Inc.,* 731 F.2d 299, 302 (5th Cir.1984) and GILMORE & BLACK, THE LAW OF ADMIRALTY, p. 377 (2d Ed.1975).