593 So.2d 341 (1992)
Guy S. FOLSE and Deborah K. Folse, Individually and on Behalf of the Minor Children, Tiffany, Kristina, Stephanie, Paige, Guy S. Jr., Jason Michael, and Nicholas Anthony Folse
v.
WESTERN ATLAS INTERNATIONAL, INC./DOWNHOLE SEISMIC SERVICES, Tidex, Inc., Tidewater Ventures, Inc. and Amoco Production Company.
No. 91 C 1335.
Supreme Court of Louisiana.
January 17, 1992.
J. Mac Morgan, New Orleans, for applicant.
Joseph G. Gallagher, Jr., James A. Oswald, Hulse, Nelson & Wanek, George Healy, III, Phelps Dunbar, Ronald A. Johnson, Johnson & McAlpine, New Orleans, for respondent.
WATSON, Justice.
The question is whether summary judgment was properly entered on Jones Act seaman's status. Plaintiff, Guy S. Folse, was injured while working on a vessel and contributing to its mission. The trial court summarily held that Folse was not a seaman, because he was not permanently attached to a specific vessel or an identifiable fleet of vessels. The court of appeal affirmed. Folse v. Western Atlas Intern., Inc., 580 So.2d 482 (La.App. 4th Cir.1991). A writ was granted to consider the issue. 586 So.2d 519 (La.1991).

*342 FACTS
Folse was employed by Downhole Seismic Services, a division of Western Atlas International, Inc., as a senior offshore seismic operator. He was assigned to the M/V HOSEA TIDE, a supply vessel with a certificate of inspection from the United States Coast Guard. The vessel is 165 feet long and may carry up to thirteen crew members. It is not authorized to carry passengers. Folse held a United States Merchant Mariners' document, rating him as an ordinary seaman.
Folse was injured while standing on the vessel's railing attaching a shackle to a buoy. While he was flipping the buoy over the stern, an air gun rack weighing approximately one ton slid into his feet. Because Folse was working on the deck of the boat, he was wearing Reebok tennis shoes, which are allowed by Downhole Seismic's safety manual.
According to the affidavit of Paul S. Henson, the manager of offshore operations for Downhole Seismic, the company conducts seismographic surveys, which are used in oil exploration. Folse spent approximately half his time onshore and half his time offshore. When he worked offshore, his job assignments normally lasted about four days. He slept and ate on the vessel during that period.
The vessels on which Folse worked were usually furnished by Downhole Seismic's customers. Amoco provided the M/V HOSEA TIDE, which was owned by Tidewater Ventures, Inc. and operated by Tidex, Inc. In answer to interrogatories, the owner and the operator of the M/V HOSEA TIDE stated that the vessel "was being used by Downhole Seismic Services" at the time of Folse's injury. When its customer did not have an available vessel, Downhole Seismic would charter a vessel. During the five weeks preceding this accident on August 29, 1989, Folse had worked on five other vessels. Two of the five vessels were chartered directly by Downhole Seismic.

LAW
Only a seaman may assert a negligence action under the Jones Act. 46 U.S.C. app. § 688. A seaman is defined "solely in terms of the employee's connection to a vessel in navigation." McDermott International Inc. v. Wilander, 498 U.S. ___, ___, 111 S.Ct. 807, 817, 112 L.Ed.2d 866, 882 (1991).
One can be a crew member on numerous vessels which have common ownership or control. Braniff v. Jackson Ave.-Gretna Ferry, Inc., 280 F.2d 523 (5th Cir.1960). When an employer chooses to borrow its customers' vessels in lieu of owning or chartering its own, the borrowed vessels constitute a fleet. Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240 (5th Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). An employer cannot deprive its employees of seaman's status by extraneous arrangements with its customers. Bertrand.
Bertrand involved an anchorhandling crew which spent most of its time offshore. Bertrand and his co-workers were assigned to a vessel their employer had borrowed from its customer. Although the crew worked on many vessels, at jobs averaging four or five days, the Bertrand plaintiffs presented a jury question on Jones Act seamen status. The missions of the vessels and plaintiffs' jobs were coextensive. See Roberts v. Williams-McWilliams Co., 648 F.2d 255 (5th Cir.1981). When plaintiffs finished their responsibilities, the vessels' missions were completed. Bertrand expanded the concept of a fleet to vessels used, but not owned or chartered, by the employer. "The Bertrand result seems unassailable." Robertson, A New Approach to Determining Seaman Status, 64 Tex.L.Rev. 79, 110 (1985).
Wilander focused on jettisoning the aid to navigation requirement of Jones Act coverage. However, Wilander also emphasized employment-connection to a vessel in navigation as the sole test of coverage.
There has been a further requirement that a Jones Act seaman be more or less permanently attached to a specific vessel or an identifiable fleet of vessels. Barrett v. Chevron U.S.A., Inc., 781 F.2d 1067 (5th *343 Cir.1986) (en banc); Offshore Co. v. Robison, 266 F.2d 769 (5th Cir.1959); Bach v. Trident Steamship Co., Inc., 920 F.2d 322 (5th Cir.), vacated, 498 U.S. ___, 111 S.Ct. 2253, 114 L.Ed.2d 706 (1991), reinstated, 947 F.2d 1290 (5th Cir.1991). This requirement was designed to distinguish between transitory, land-based employees and those working aboard a vessel for a voyage. See Robertson, A New Approach to Determining Seaman Status, 64 Tex.L.Rev. 79 (1985).
The attachment rule has been mechanically applied to exclude maritime workers on short voyages aboard a large number of vessels from Jones Act coverage. For example, Bach held that a river pilot was not a seaman because his work aboard each vessel was transitory. The United States Supreme Court vacated Bach for reconsideration in light of Wilander. Wilander does not mention more or less permanent attachment to a vessel or fleet of vessels. The Bach panel of the Fifth Circuit reinstated its vacated opinion, stating that "Wilander has no effect" on its opinion. 947 F.2d 1290.
Southwest Marine, Inc. v. Gizoni, ___ U.S. ___, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991), held that a rigging foreman employed in ship repair, who rode on floating platforms, was not excluded from seaman's status. Although Gizoni only "rode" the platforms during working hours, the United States Supreme Court concluded that his status as a Jones Act seaman was a jury question. Gizoni casts further doubt on the more or less permanent attachment aspect of Robison, Barrett and Bach.
Seaman's status under the Jones Act is a mixed question of law and fact. Wilander; Gizoni. It "depends largely on the facts of the particular case and the activity in which he was engaged at the time of injury." Desper v. Starved Rock Ferry Co., 342 U.S. 187, 190, 72 S.Ct. 216, 218, 96 L.Ed. 205, 209 (1952), as quoted in Wilander. In general, a directed verdict or a summary judgment on the issue of seaman's status is inappropriate. See Wilander.

CONCLUSION
The M/V HOSEA TIDE was being used by Downhole Seismic for a seismographic surveying voyage. Folse's offshore job assignments normally lasted about four days. During those four days, Folse slept and ate aboard the vessel. Folse was not a land based worker providing shore services to docked vessels. He went to sea on specific short voyages. In each case, his tour of duty was for the duration of the vessel's mission. Folse was not a transitory employee; he was certainly more "attached" than Gizoni. The vessel's voyage and Folse's job were coextensive. Folse, a licensed seaman, was injured while assigned to the M/V HOSEA TIDE, a Coast Guard certified vessel.
These facts fit the Bertrand rationale. The employees of Downhole Seismic did not work on their employer's vessels because Downhole Seismic chose to use the vessels of its customers. When Downhole Seismic had to charter a vessel, its employees performed the same work that was performed on the customers' vessels. If the company had chartered a fleet of vessels, its employees would be seamen. They cannot be deprived of seaman's status by the employer's business decision to use its customers' boats.
Folse's assignment was less transient than Bach's, but it was not permanent. It involved substantial work on given missions. Folse was injured while working as a deckhand preparing the vessel for its mission. Unlike Bach, Folse served only on ships borrowed or chartered by his employer. The vessels to which Folse was assigned could constitute a fleet under Bertrand. There is a common nexus missing in Bach. Thus, Bach's situation can be distinguished from that of Folse. Moreover, the effect of Wilander and Gizoni on cases like Bach has not been finally resolved.
His employer assigned Folse to a vessel for the duration of its seismographic surveying voyage. His employment connection to a vessel in navigation presents a jury question on Jones Act seaman status. *344 A reasonable juror could conclude that Folse was a seaman.
The court of appeal erred in affirming the trial court's summary judgment that Folse was not a seaman as a matter of law.
For the foregoing reasons, the judgment of the court of appeal is reversed and the matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
DENNIS, J., concurs with reasons.
LEMMON, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
While I concur in the reasons assigned by the majority, I write separately to assign additional reasons.
Seaman status, until very recently, was decided under the two part test of Offshore Company v. Robison, 266 F.2d 769 (5th Cir.1959). Robison provided a two part test which required that the employee contribute to the function of the vessel and be permanently attached to a vessel or fleet of vessels under the control of his employer. The United States Supreme Court in McDermott International, Inc. v. Wilander, 498 U.S. ___, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), affirmed this first prong of the Robison test.
In the case before this court, the trial court and the court of appeal found that there were no genuine issues of material fact which would warrant submitting the question of plaintiff's status as a seaman to the jury. The plaintiff sought review of this decision, primarily on the basis of Judge Plotkin's dissent to the court of appeal's written reasons. The court of appeal and the dissent agree that the plaintiff fits the definition of a seaman under McDermott International, Inc. v. Wilander, 498 U.S. ___, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) except that plaintiff was not found to be permanently assigned to a vessel or an identifiable fleet of vessels under his employer's control. Folse v. Western Atlas International, Inc., 580 So.2d 482, 484 (La.App. 4th Cir.1991). See also Offshore Co. v. Robison, supra. In his dissent, Judge Plotkin notes that the majority concluded that the vessels plaintiff was assigned to from time to time did not constitute a fleet even though there were disputed issues of fact as to whether or not the employer controlled the vessels actually or constructively during the seismic voyages. Folse, supra, at 485. In reviewing the facts, the defendant did not submit evidence which would indicate who controlled non-chartered vessels such as the M/V HOSEA TIDE. The defendant instead relied on factually similar cases which cannot satisfy the principles espoused under La. C.C.P. art. 967. Under art. 967, facts are set forth by supporting and opposing affidavits, which may be supplemented by depositions. Analogous cases previously decided do not satisfy this burden. This court similarly rejected the use of analogous judicial opinions for showings of fact in this court's opinion in DeReyes v. Marine Management and Consulting, Inc., 586 So.2d 103, 114 (La.1991). Since the defendant failed to provide any evidence to contradict the allegations contained in plaintiff's original or amended petition, summary judgment in favor of the defendant, as suggested by Judge Plotkin, was inappropriate.
However, as a matter of law summary judgment was also improper under the facts of this case as accepted by the court of appeal. The United States Supreme Court in Wilander was silent as to the second prong of the Robison test for seaman status. In light of this consideration, I believe that the Robison requirement of permanent attachment is subsumed in the greater definition of Wilander that to qualify as a seaman, an employee must contribute to the function of a vessel. This position can be reconciled with the jurisprudence in the federal courts by finding that a temporary employee or one not attached to a vessel or fleet of vessels cannot truly be said to have contributed to the function of the vessel. Rather, such an employee is merely temporarily utilized and plays no part in the greater purpose of the voyage or vessel. Cf., Bach v. Trident Steamship Co., Inc., 920 F.2d 322 (5th Cir.), vacated *345 498 U.S. ___, 111 S.Ct. 2253, 114 L.Ed.2d 706 reinstated 947 F.2d 1290 (5th Cir.1991) (river pilot temporarily utilized was not a seaman for purposes of the Jones Act because he was not permanently assigned to a vessel).
The permanently attached prong of Robison has not been applied as a hard and fast rule. In Roberts v. Williams-McWilliams Co., Inc., 648 F.2d 255, 261 (5th Cir.1981), the United States Fifth Circuit stated "we recognized that the word permanent has never been assigned a literal interpretation under the Jones Act and should not be given a wooden application, but rather, is to be used as an analytical starting point instead of a self-executing formula." In other cases, the federal courts have recognized that an employee may still be a Jones Act seaman despite the fact that the employee's work places him on several different vessels which may not be under the common ownership or control of his employer. See Bertrand v. International Mooring and Marine Co., 700 F.2d 240 (5th Cir.1983); Smith v. Odom Offshore Surveys, Inc., 588 F.Supp. 1168 (M.D.La. 1984), affirmed, 791 F.2d 411 (5th Cir.1986). Thus, plaintiff's assignment to various vessels through the course of his employment, and the control or lack thereof by his immediate employer, does not compel a finding that he is not a seaman under the Jones Act. Hall v. Diamond M. Co., 732 F.2d 1246, 1248-49 (5th Cir.1984). In Wallace v. Oceaneering International, 727 F.2d 427, 435 (5th Cir.1984), the court held that "in addition to holding that random ownership of the vessels which a plaintiff worked did not preclude his meeting the permanence or substantiality aspect of seaman status, Bertrand emphasized the `character and extent' or `nature and location' of the work performed as affirmatively supporting Jones Act coverage." In the facts of this case, plaintiff's primary duties were to conduct seismic surveys on a vessel. It is obvious that the shore duty that plaintiff engaged in was for the exclusive purpose of ensuring the operability of equipment used in the seismic operations conducted on the vessels he was assigned to. Without the maintenance of that equipment, plaintiff would be unable to serve and complete his missions as a member of the crew. Accord, Smith v. Offshore Surveys, Inc., supra.
Thus, the district court was unnecessarily faced with the difficult task of determining who controlled the fleet upon which the plaintiff served. Both plaintiff's and defendant's affidavits indicate that plaintiff joined the M/V HOSEA TIDE for the purpose of engaging in a voyage whose purpose was to conduct seismic surveys for Amoco Oil Co. The voyage, under defendant's evidence, was to last between two and ten days. For this purpose, plaintiff was for the duration of the voyage permanently assigned to the vessel for the purpose of carrying out the vessel's intended function. Historically, seamen were hired for sole voyages only. Cf., Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949). Under Wilander, the Supreme Court instructs that to determine an employee's seaman status under the Jones Act, we must look to the law in effect at the time the Jones Act was enacted, 1920. Wilander, supra, 111 S.Ct. at 811. Therefore, the district court should have looked at the plaintiff's employment in the context of the voyage for which he is engaged. Like the plaintiff in Wilander, the mere fact that he did not actually engage in navigating the vessel is irrelevant to the issue, as is the fact that some work was carried out near or on offshore platforms. Plaintiff, during the entirety of previous voyages, was based on the vessel and conducted most of the activities from the vessel in connection with the seismic operations; including eating and sleeping aboard the vessel while engaged in the field.
Likewise, the federal jurisprudence is clear that the length of time of service on board a vessel is irrelevant to the plaintiff's rights under the Jones Act. Cf., Southwest Marine, Inc. v. Gizoni, ___ U.S. ___, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). In Mach v. Pennsylvania R.R. Co., 207 F.Supp. 233, 235 (W.D.Penn.1962), the court noted that "a seaman is not to be denied the traditional privileges of his status *346 merely or solely because his voyages are short, because he sleeps ashore or for other reasons his lot is more pleasant than that of most of his brethren." The plaintiff in Mach was a bargeman who worked during the day navigating barges into position for unloading and then downriver to be moored with other empty barges. The defendant claimed that he failed to satisfy the "permenantly attached" requirement of seaman status. This was rejected. The court of appeal, affirming the district court, 317 F.2d 761, 768 (3d Cir.1963), held that "the duration of service for and upon a vessel may determine whether shipboard work which is not normally performed by a ship's company makes the worker a crewman, but lack of long continued attachment to the vessel cannot, as a matter of law, serve to deny seaman's status under the Jones Act to an employee who is injured while assigned to and performing normal crew services." Under the facts of the present case, plaintiff Folse's attachment to the M/V HOSEA TIDE was certainly more certain and substantial than the bargeman in Mach who conducted his duties during the course of a day, not for several days at sea during a voyage like the plaintiff herein. The requirement of "permanently attached" is to prohibit merely transitory employees, on board a vessel for reasons not germane to the overall purpose of the vessel's voyage or mission, from coming under the Jones Act. Such a case where seaman status was denied a plaintiff was Lotzman v. Oxyness Shipping Co., Inc., 93 Misc.2d 461, 402 N.Y.S.2d 964 (1978), where a maritime compass repairman was injured on board a vessel where he was conducting repairs to a vessel's navigation system.
Thus, the trial court and court of appeal erred in not considering the Wilander analysis in the context of the individual voyage plaintiff was engaged in. For the purposes of the seismic operations to be conducted on board the M/V HOSEA TIDE, plaintiff was permanently assigned for the duration of the voyage (as opposed to only transitorily present) to serve as a member of the crew. The purpose of the voyage vessel was to conduct seismic operations and plaintiff played an integral part in the accomplishment of that mission. Cf., Wilander, supra. The court of appeal and trial court failed to give any weight to the fact that plaintiff's injury arose out of his permanent assignment to the vessel for a voyage and thus erred in denying plaintiff seaman status.
LEMMON, Justice, concurring.
The purpose of the "permanently assigned to a specific vessel or an identifiable fleet of vessels" criterion in determining seaman status is to exclude longshoremen who are only transiently attached to a number of different vessels. However, this employee spent approximately one-half of his working time offshore performing the same duties in seismic exploration which contributed to the mission of the various vessels on which he worked, and he was not permanently assigned to a specific vessel or an identifiable fleet of vessels only because his employer chose this method of business operations, and not because of the nature of the work performed by the employee on the vessels. Plaintiff's status as a seaman on this record is a jury question.