611 So.2d 129 (1992)
Glenn THERIOT
v.
McDERMOTT, INC. and Harvey Plaisance.
No. 92 CA 0643.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
Rehearing Denied January 21, 1993.
Writ Denied April 2, 1993.
*131 Joseph L. Waitz, Waitz & Downer, Houma, for plaintiff-appellee Glenn Theriot.
Ward F. LaFleur, Preis & Kraft, Lafayette, André J. Mouledoux, Hebert, Mouledoux & Bland, New Orleans, for defendant-appellant McDermott, Inc. and Harvey Plaisance.
Docia L. Dalby, Rice, Fowler, Kingsmill, Vance, Flint & Booth, New Orleans, for third party defendant's Robert Murrary Collins, Certain Underwriters At Lloyds, London, Commercial Union Assur. Co., et al.
Terrence F. Forstall, Courtenay, Forstall, Guilbault, Hunter & Fontana, New Orleans, for Certain Underwriters At Lloyds, London, Certain British Companies.
Before WATKINS, CRAIN and GONZALES, JJ.
CRAIN, Judge.
Defendants offshore corporation, McDermott, Inc. and its employee, Harvey Plaisance,[1] appeal a judgment of the district court which awarded plaintiff offshore worker, Glenn Theriot, damages of $451,300.15 for personal injuries under the Jones Act. 46 U.S.C. 688. Plaintiff answers the appeal seeking punitive damages and attorney fees for the defendants' refusal to pay maintenance and cure. Plaintiff also seeks prejudgment interest on all items of damages. We affirm the judgment of the district court.
The facts surrounding plaintiff's injury were found by the trial court judge and are fully supported by the record. We adopt these facts for purposes of this opinion:
Glenn Theriot is a welder and former employee of Venture Associates, Inc., an oilfield service contractor. Venture provided crews of welders like Glenn Theriot to customers for particular jobs.
On November 6, 1988, Theriot was working on a McDermott, Inc. vessel, the Derrick Barge 50 (DB 50). The project was the abandonment of an offshore platform for Exxon. Theriot had been assigned to that project for several days before November 6. For several weeks before that day, he had been working on McDermott jobs but on different vessels.
The incident which led to the filing of this lawsuit occurred on November 6, 1988. Defendant, Harvey Plaisance, a McDermott employee, along with other McDermott employees, was attempting to cut a pole with lights from a structure that had been removed from the Exxon platform. The structure was placed on the deck of the DB 50 to remove the pole and lights. Plaisance, using a cutting torch, cut on the pole, a six inch steel pipe, but not all the way through, to avoid the pole immediately falling over. After making the initial cut, Plaisance solicited assistance from others and attempted to tie a line from the pole to the deck to secure the rig when the cut was finished and lower the lights to the deck without incident. The pole (with lights) was about ten to twelve feet high and the unit weighed about two hundred pounds. Plaisance saw Theriot, who was working on another project nearby, and *132 asked him to assist in securing and lowering the pole and lights. Before anyone could complete the process of securing the pole, the pole began to fall. Plaisance yelled a warning to all in the area, including the plaintiff, and everyone scattered in different directions. The plaintiff ran but he was struck by the pole across his back and his arm. Plaisance had obviously cut on the pole too much for it to continue to bear the weight of the lights, and it fell unexpectedly.
There are three issues[2] presented for our consideration: 1) Did the trial court err in finding the plaintiff met the criterion of a "seaman" under the Jones Act (46 U.S.C. § 688)? 2) Is plaintiff entitled to punitive damages and attorney fees for defendant's refusal to pay maintenance and cure? and 3) Did the trial court err in failing to award prejudgment interest on all items of damages?
"Seaman" Status
The trial court found that Mr. Theriot qualified as a "seaman" for purposes of the Jones Act and as such, could recover damages for personal injuries occasioned by his employer's negligence. 46 U.S.C. 688. In this regard the court reasoned as follows:
Although Theriot worked for Venture, he received all job instructions from McDermott personnel. He had been working on this project for several days. About half of his time was spent on the barge and the other half on the platform. On the previous jobs with McDermott, Theriot spent about eighty percent of his time on the platform or job site and twenty percent on the McDermott vessel.
. . . . .
APPLICATION OF LAW TO THE FACTS
The first issue is seaman status. This Court finds that the plaintiff is a seaman for purposes of this case and his cause of action against the defendants. His work on the DB 50 involved the abandonment of an Exxon platform. He worked on the vessel about one half of his time offshore, the other half being on the platform. He took his meals and slept on the DB 50.
The Court finds that Theriot performed a substantial part of his work on the vessel, and that Theriot contributed to the function of the vessel and to the accomplishment of its mission. Considering his entire employment with Venture and the assignment when the accident occurred, all of the tests for seaman status have been satisfied.
In refuting the finding of "seaman" status by the district court, defendants contend that, in addition to performing a substantial part of his work on the vessel and contributing to the function of the vessel and accomplishment of its mission, it was imperative that plaintiff have a "permanent connection" to the vessel. Absent this factor, defendant argues that plaintiff has not met the criterion necessary for "seaman" status. We disagree with this conclusion.
The determination of "seaman" status, under the Jones Act, is inherently a factual question and such findings will not be reversed unless clearly wrong. 46 U.S.C. 688. See: Portier v. Texaco, Inc., 426 So.2d 623 (La.App. 1st Cir.1982) writ denied, 433 So.2d 165 (La.1983); Legros v. Panther Services Group, Inc., 863 F.2d 345 (5th Cir., 1988); Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir., 1986).
The test for a determination of "seaman" status was first set forth in a United States Fifth Circuit Court opinion in Offshore Co. v. Robison, 266 F.2d 769 (5th Cir., 1959). The test was reaffirmed by that court, en banc, in Barrett v. Chevron, U.S.A., Inc., supra. The Court in Robison, supra, at 779 stated the following:
[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float *133 on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips. (Emphasis added)
In the recent United States Supreme Court decision of McDermott International, Inc. v. Wilander, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), the Court discussed this test and specifically considered the second prong of the test. In McDermott, id., 498 U.S. at ___, 111 S.Ct. at 817 the Supreme Court determined that in order to qualify as a "seaman", under this leg of the test: "[I]t is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work."
On appeal, defendants contend that certain dicta in Wilander, id. 498 U.S. at ___, 111 S.Ct. at 817 requires the Robison test to be revised so as to mandate permanency as an essential element of the first prong of the test.[3] We disagree.
A clear reading of the subject decision convinces us that the Supreme Court in Wilander, supra, neither intended to, nor did it, redefine the test for "seaman" status established in Robison, supra. In this case the two aspects of the first prong of the Robison test (i.e., permanency and substantiality) were presented in the disjunctive. Additionally, in Wilander, as in the authority upon which it relied (i.e., Maryland Casualty Co. v. Lawson, infra), the issue of whether substantiality would suffice in lieu of permanency was not addressed. Moreover, the Wilander Court specifically stated its intentions in granting certiorari in this case: "We granted certiorari, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990), to resolve the conflict between the Robison and Johnson [v. John F. Beasley Construction Company, 742 F.2d 1054 (7th Cir.1984) ] tests on the issue of the transportation/navigation function requirement, and now affirm." Id. 498 U.S. at ___, 111 S.Ct. at 810.
In further emphasizing the limited nature of the Court's inquiry in this case, the Court observed:
The question presented here is narrow. We are not asked to determine if the jury could reasonably have found that Wilander had a sufficient connection to the Gates Tide to be a "seaman" under the Jones Act. We are not even asked whether the jury reasonably found that Wilander advanced the function or mission of the Gates Tide. We are asked only if Wilander should be precluded from seaman status because he did not perform transportation-related functions on board the Gates Tide. Our answer is no. [Id. 498 U.S. at ___, 111 S.Ct. at 818.]
Accordingly, we reject, as unfounded, the defendant's contention that the Supreme Court redefined the Robison test in Wilander, id., so as to require permanency as an essential test element. This contention lacks merit.
In the alternative, defendants argue that the plaintiff has not satisfied the requirements necessary to prove that he "performed a substantial part of his work on the vessel". Robison, supra, at 779. As such, defendants allege that the trial court erred in concluding that Theriot was a "seaman" under the Jones Act.[4] 46 *134 U.S.C. 688. Defendants reason that plaintiff's work time with McDermott amounted to less than 10% of his work history with Venture Associates, and accordingly, he does not satisfy the substantiality requirement. Further, defendants contend that the trial court's analysis of this factor is flawed in that it was based upon all vessel-related work which occurred during the plaintiff's employment with Venture Associates.
The test for determining "substantiality" under the Robison decision, is set forth in Barrett v. Chevron, U.S.A., Inc., supra at 1075-1076:
Thus, if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform) his status as a crew member is determined `in the context of his entire employment' with his current employer. This is not an inflexible requirement, however, and does not preclude assessment of the extent of the employee's work aboard a vessel over a shorter time period if the employee's permanent job assignment during his term of employment has changed. If the plaintiff receives a new work assignment before his accident in which either his essential duties or his work location is permanently changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job. (Emphasis Added. Footnotes and Citations deleted)
The record reveals the plaintiff's work history. He was employed by Venture Associates since February, 1988, performing various jobs as a welder, at locations offshore and on land.
During his tenure with Venture Associates, Theriot worked for three major contractors:
(1) International Hammer (February 19, 1988-March 15, 1988.)
(2) PLUS (April 21, 1988-September 13, 1988 and December 7-14, 1988).
(3) McDermott (October 21, 1988-November 10, 1988).
His total work time consisted of 1,014.5 hours with 748 hours spent in offshore work and 266.5 hours spent on land.
While working for International Hammer, the plaintiff's entire work time of 47.5 hours was spent on land based jobs.
Prior to his accident, the plaintiff worked for PLUS for 643 hours; of which, according to his testimony, 442 hours were spent working aboard the barge "Tonkawa". Following his accident, plaintiff again worked for PLUS for a period of 72 hours; of which 18 hours were spent on land and 54 hours were spent offshore.
At the time of his accident, plaintiff was working for McDermott. He spent 252 hours of his total work time with this contractor, and the job consisted basically of two projects (an installation and an abandonment project). The first project comprised 91 hours of work, of which 18.2 hours (i.e., 20% of 91 hrs.) was spent upon a vessel or fleet of vessels. The second project consisted of 161 hours, of which 80.5 hours (i.e., 50% of 161 hrs.) was spent aboard a vessel or fleet of vessels.
The record reflects that the management of the McDermott job was conducted by this contractor. That is, all orders for Venture workmen (including plaintiff) were given by McDermott. McDermott prepared these employees' time tickets. The Venture employees attended safety meetings conducted by McDermott. The equipment used for the job was supplied by McDermott. Thus, according to Venture's President, he supplied the laborers for the job and delivered them to the work site. Thereafter, everything concerning these workmen was left to the contractor on the particular job.
With regard to the McDermott job, plaintiff was employed by Venture Associates and began working for McDermott on a platform installation and salvage project on October 21, 1988. The site of the project was High Island 343-A located off the Texas coast on the Outer Continental Shelf.
At the time of his injury, on November 10, 1988, plaintiff was engaged in the salvage aspect of this job. According to Theriot this was a project to salvage an Exxon platform. It involved cutting the platform *135 into sections; placing the salvage on a material barge where it could be tied down and dismantled. The work took place on the platform, a derrick barge and material barge.
The derrick barge utilized for the operation was Derrick Barge 50, which consisted of a rigging crew, welding crew and vessel crew. The welding crew, of which plaintiff was a member, ate and slept on the vessel. No other facility was available for this purpose. The welding equipment was kept on this derrick barge and it was dragged to the material barge or jacket for work.
The material barge used on this project was the Tideland 011 and it was owned by McDermott. This barge was towed, by tugboat, to the work site where it was required for the work being done on the derrick barge. The material barge transported various equipment used for the installation and salvage project. In this case the material barge was used in the salvage of a jacket which was placed on the material barge.
In describing his work experience on this McDermott project, Theriot stated that once he arrived at the work location, he worked "12 hours a day, 12 hours on the barge and 12 hours on the platform because you have 12 hours of time off." According to Theriot, during his 12 hours of off time he did not need to go on the platform at all.
In dividing his platform and vessel time on the installation project with McDermott, Theriot theorized that he spent 80-85% of his time on a fixed structure and 15-20% of his time on the derrick barge. With regard to the abandonment phase of the project, Theriot figured that he spent 50% of his time on the platform and 50% of his time on the derrick barge. The record reflects that of the 252 hours of work, engaged in by the plaintiff for McDermott, he spent 98.7 hours working aboard a vessel or fleet of vessels.
Considering the facts presented we find that the trial judge correctly concluded that the plaintiff performed a substantial amount of his work on a vessel and thus, qualified as a "seaman" under the Jones Act.
That is, plaintiff was an employee of Venture Associates whose work duties were divided between land and vessel.
Normally his status as a crew member would be assessed in terms of his entire employment with Venture Associates, however, in this case plaintiff falls within the exception set forth in Barrett, supra, at 1073-1075. In particular, plaintiff received a new work assignment (with McDermott), shortly before his accident, in which his work location was permanently changed. (i.e., he finished work with PLUS on the barge "Tonkawa" and began work with McDermott on the installation/salvage of the Exxon platform at High Island 343A off the Texas coast). Under these circumstances, the trial court correctly evaluated the plaintiff's status on the basis of his activities in his new job with McDermott and concluded that Theriot performed a substantial part of his work upon a vessel.
Based on the evidence presented the court found that plaintiff was a seaman in that 50% of his time was spent on the vessel and 50% of his time was spent on the platform. As such of the 156 hours expended on the McDermott abandonment job 78 hours was spent on the vessel, Derrick Barge 50. Moreover, of the 252 hours expended on the entire McDermott project 98.7 hours was spent working aboard a vessel or fleet of vessels.
Under these circumstances the trial court correctly concluded that Theriot performed a substantial part of his work upon a vessel and hence, he qualified for "seaman" status under the Jones Act.[5]
Accordingly, this assignment of error lacks merit.
Punitive Damages & Attorney Fees
The plaintiff's answer to the appeal alleges error on the trial court's part in failing to award punitive damages and attorney fees as a result of the defendant's arbitrary and capricious actions in refusing to provide him maintenance and cure. Additionally, plaintiff contends that such an *136 award is warranted because of the defendants' wilful and wanton disregard of the plaintiff's safety.
When a seaman is injured in the service of his ship, the shipowner must pay him maintenance and cure regardless of the fault of the shipowner or unseaworthiness of the ship. Morales v. Garijak, Inc., 829 F.2d 1355 (5th Cir., 1987). Following an investigation which indicates a legitimate claim for maintenance and cure, a shipowner's unreasonable rejection of such a claim will subject him to compensatory damages. Morales v. Garijak, id.
If, in such a refusal, the shipowner is not only unreasonable but is more egregiously at fault, he will be liable for punitive damages and attorney fees. See Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Holmes v. J. Ray McDermott & Co., 734 F.2d 1110 (5th Cir., 1984) citing Vaughan v. Atkinson, supra and Complaint of Merry Shipping, Inc., 650 F.2d 622 (5th Cir., 1981), rehearing denied, 659 F.2d 1079 (1981).
In the present case there exists a serious question as to the seaman status of the plaintiff. As previously discussed, to date the defendants contend that plaintiff does not meet the criterion of a "seaman". Absent such status, plaintiff would not be entitled to an award of maintenance and cure. Under these circumstances we cannot say that the defendants' refusal to pay maintenance and cure was unreasonable or arbitrary and capricious. For these reasons the trial judge did not err in his refusal to award punitive damages and attorney fees resulting from the defendants' refusal to pay maintenance and cure.
Finally, plaintiff contends that a punitive damage award was warranted because of the defendants' willful and wanton disregard of the plaintiff's safety.
In this federal circuit, Jones Act damages are limited to pecuniary losses. See Anderson v. Texaco, Inc., 797 F.Supp. 531 (1992); Kopczynski v. The Jacqueline, 742 F.2d 555 (9th Cir., 1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985), citing Merry Shipping, supra. Since punitive damages are non-pecuniary they may not be awarded on a claim of negligence based on the Jones Act. Kopczynski v. The Jacqueline, id.
In this Jones Act case, even if the actions of the defendants constituted a willful and wanton disregard of the plaintiff's safety, there exist no provisions for an award of punitive damages. For these reasons, we find no error in the ruling of the trial court judge, denying an award of such damages.
Pre-Judgment Interest
The plaintiff contends that prejudgment interest should have been awarded on all elements of damages and the trial court's failure to assess pre-judgment interest on the award of future damages was error.
In a Jones Act case, interest may be awarded only from the date of the judgment. Hirstius v. Louisiana Materials Co., Inc., 413 So.2d 611 (La.App., 1st Cir., 1982), cert. denied, 415 So.2d 943 (1982). However, if an action is brought under the Jones Act, as well as general maritime law, the award of pre-judgment interest is discretionary with the trial court. Danos v. McDermott, Inc., 563 So.2d 968 (La.App. 1st Cir., 1990), writ not considered, 566 So.2d 386 (La.1990). In such instances, prejudgment interest is not recoverable on damages which are intended to compensate the plaintiff for future harm. Simeon v. T. Smith & Son, Inc., 852 F.2d 1421 (5th Cir., 1988), cert. den., 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).
In the present case, which was brought under the Jones Act and general maritime law, the district court judge awarded prejudgment interest on all damages except those which compensated the plaintiff for future harm. We find no error in this award.
For the reasons assigned the judgment of the district court is affirmed at defendant's costs.
AFFIRMED.
GONZALES, J., concurs.
NOTES
[1] Plaintiff has filed a motion to dismiss the appeal against this defendant in that no argument was advanced on his behalf. We deny this motion as meritless. The defendants were cast in solido and the arguments advanced by appellants are applicable to both defendants.

In partial response to plaintiff's motion to dismiss, defendant, Harvey Plaisance, asks this Court to consider a peremptory exception of no cause of action. We refuse to consider this exception which was pleaded for the first time two days after submission of the case for a decision. La.C.C.P. Art. 2163.
[2] Because we conclude that plaintiff is a Jones Act seaman, we do not consider the alternative issue of vessel negligence under 33 U.S.C. 905(b).
[3] The language to which the defendants allude is as follows:

The key to seaman status is employment-related connection to a vessel in navigation. We are not called upon here to define this connection in all details, but we hold that a necessary element of the connection is that a seaman perform the work of a vessel. See Maryland Casualty Co. v. Lawson, 94 F.2d 190, 192 (CA5 1938) ("There is implied a definite and permanent connection with the vessel, an obligation to forward her enterprise"), cited approvingly in Norton [v. Warner Co.] 321 U.S. [565], at 573, 64 S.Ct. [747], at 751 [88 L.Ed. 931] [ (1944) ]. In this regard, we believe the requirement that an employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission" captures well an important requirement of seaman status.
[4] Defendants concede that the second prong of the Robison test, supra, (namely, that the plaintiff's duties contributed to the function of the vessel or the accomplishment of its mission) has been satisfied in this case.
[5] To the extent that the trial court judge considered the defendant's entire employment with Venture, he was in error, however, the conclusion reached was nonetheless correct.