626 So.2d 16 (1993)
David LeBLANC
v.
DYNAMIC OFFSHORE CONTRACTORS, INC., and National Union Fire Insurance Company of Pittsburgh.
No. CA 92 1628.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
*17 J.B. Jones, Jr., Jones Law Firm, Cameron, Frank E. Lemoine, Abbeville, for David LeBlanc (Pauper).
Ward F. LaFleur, Preis & Kraft, Lafayette, for Dynamic Offshore Contractors, Inc., (and) National Union Fire Ins. Co. of Pittsburg.
Francis V. Liantonio, Jr., Robert A. Vosbein, Adams & Reese, New Orleans, for Owensby & Kritikos, Inc.
James R. Sutterfiled, James T. Grevenburg, Hoffman, Sutterfiled, Ensenat, New Orleans, for Mobile-Lab, Inc.
Keitha A. Leonard, H. Lee Leonard & Associates, Lafayette, for Nat. Union Fire Ins. Co.
Before EDWARDS, CRAIN and LeBLANC, JJ.
EDWARDS, Judge.
Plaintiff, David LeBlanc, claimed seaman status under the Jones Act, 46 U.S.C.App. § 688, and filed suit against his employer, Dynamic Offshore Contractors, Inc. (Dynamic), and Dynamic's insurer, National Union Fire Insurance Company of Pittsburgh (Union) for damages plaintiff sustained on or about April 12, 1988, as the result of an injury while working with a Dynamic crew to repair a compressor station owned by Chevron U.S.A., Inc.[1] By supplemental and amending petition, Mobile-Lab, Inc. (Mobile) was added as a defendant. Allegedly, Mobile was hired by Chevron U.S.A., Inc. to provide inspection services on the repair project and ensure that all work was being done according to contract specifications. Plaintiff claimed that Mobile exerted operational control over the project and failed in its duty to provide a safe workplace. Therefore, Mobile was at fault in causing plaintiff's injury. Union intervened as Dynamic's worker's compensation insurer to recover all amounts paid to or on behalf of the plaintiff.
*18 Mobile filed a motion for summary judgment and asserted that Mobile exercised no operational control over Dynamic employees, including David LeBlanc, and that Mobile had no duty to ensure that Dynamic, an independent contractor, or its employees performed their duties in a safe manner. Based on supporting documents, no genuine issue of material fact remained and Mobile was entitled to summary judgment as a matter of law.
Dynamic filed a motion for summary judgment asserting that LeBlanc was not a seaman because he was not permanently assigned to a vessel and that, after a review of his entire work history with Dynamic, a substantial part of his work had not been performed aboard a vessel. No genuine issue of material fact as to plaintiff's seaman status remained and, therefore, the summary judgment should be granted and plaintiff's claims should be dismissed.
The trial court agreed with Mobile and granted the summary judgment dismissing plaintiff's claims against Mobile. LeBlanc and Union appealed.
In considering the Dynamic motion for summary judgment, the trial court found that it could not identify a vessel or fleet of vessels, that LeBlanc was not permanently assigned to a vessel or fleet, that after a review of LeBlanc's work history with Dynamic, a substantial amount of work had not been done on vessels, and that LeBlanc's work did not contribute to the function of the vessel or fleet. Therefore, because seaman status was precluded by law, the trial court granted the Dynamic motion for summary judgment and dismissed plaintiff's claims. LeBlanc appealed.
We affirm the summary judgment in favor of Mobile, and reverse the judgment in favor of Dynamic. Genuine issues of material fact remain on whether LeBlanc qualifies for seaman status and the question of seaman status must go to the trier of fact.

BACKGROUND
Dynamic and several other contractors, including other welding companies like Dynamic, were engaged by Chevron U.S.A., Inc. to perform repair work on its compressor station in South Timbalier Bay in Lafourche Parish. The compressor station rested on sunken barges. LeBlanc alleged in his petition that Chevron had engaged a fleet of vessels to assist in the work on the compressor station. The alleged fleet consisted of a crew boat that transported men; several floating material barges, some with cranes aboard; tugboats to move the barges around; and a quarter boat to house the men.
LeBlanc, a Dynamic employee since June 21, 1987, testified by deposition taken on January 23, 1991,[2] that he had worked for Dynamic on several different off-shore jobs, mostly off of fixed platforms or jack-up rigs. He worked at the land-based Dynamic shop for one to two months. Dynamic submitted a work history for LeBlanc covering his entire employment with Dynamic that showed a significantly higher percentage of work on land or fixed platforms than on vessels.
Dynamic sent LeBlanc to the Chevron job on or about April 8, 1988. LeBlanc testified in the January 23 deposition that he was told by Dynamic that the Chevron job was already in progress, but the job could last about four to six months. The job was as a welder's helper and would consist of fourteen to sixteen hour shifts for fourteen days, with seven days off. LeBlanc testified that he knew the job was for an indefinite period of time, but believed that it could be steady work.[3]
*19 LeBlanc and other Dynamic employees were transported by crew boat to the job site. While at the site, the Dynamic crew ate and slept aboard a quarter boat. According to LeBlanc, Dynamic had about sixty employees on the job, with twenty-five to thirty working the night shift.
According to LeBlanc's depositions, on April 8, the first night LeBlanc was on site, he worked primarily on the compressor station. On the second and third nights, most of his work was done on the material barges floating around the compressor station. The welding equipment was stored on the material barges. Periodically, the tugs moved the barges to the bank to pick up more materials and then moved the barges back into place. On the fourth night, April 11, LeBlanc began work on a material barge. Later that night, LeBlanc and his welder, Larry Dupre, were instructed by a Dynamic supervisor to cut two twenty foot pieces of angle iron into six foot sections and prepare them as instructed. LeBlanc and Dupre were told by the Dynamic supervisor that this work had to be finished by the end of the night shift.
Sometime after midnight on April 12, LeBlanc and the welder were still trying to get the iron cut. LeBlanc estimated that six hours were lost in trying to decide how to do the job. LeBlanc alleges that he felt pain in his back when he attempted to pick up one of the twenty foot sections with only one helper. However, after a time, the pain went away and LeBlanc continued working. Two Dynamic employees had assisted LeBlanc in picking up the other twenty foot section without incident.
Before the accident, LeBlanc and other Dynamic employees asked one of the crane operators to help move the large sections of iron into a jack so that the iron could be cut. According to LeBlanc, the crane operator refused, first, because the crane was standing by to help another crew, and second, because the crane could not operate in the area where the iron was located.
After the iron was cut, LeBlanc was again injured while lifting one of the six foot pieces of angle iron unassisted. LeBlanc had been told by an X-ray crew and a Dynamic supervisor to move the work site and the iron to allow the X-ray crew access to the area. LeBlanc testified that everyone else was busy and could not help him move the cut six foot iron pieces. Larry Dupre, the Dynamic welder, also refused to help. After this second injury, the pain in his back was more serious and LeBlanc was unable to continue working on the iron. The injury was reported to the Dynamic night supervisor. LeBlanc was sent to paint some handrails, but the pain increased and he was unable to work. The incident was reported to the overall Dynamic supervisor and LeBlanc was eventually transported to a hospital.

SUMMARY JUDGMENT
Motions for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The burden is upon the mover to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Under LSA-C.C.P. article 967, when a motion for summary judgment is made and supported, an adverse party may not rest upon the mere allegations or denials in his pleadings. When the documents support the motion for summary judgment, the burden shifts to the opposing party to present evidence that a material fact is still at issue. Louisiana Nat. Bank v. Slaughter, 563 So.2d 445, 447-48 (La.App. 1st Cir.1990). Summary judgments are not favored, and any reasonable doubt should be resolved against the mover. Louisiana Nat. Bank, 563 So.2d at 448.

*20 MOBILE SUMMARY JUDGMENT
Plaintiff assigns error to the trial court's failure to find that Mobile through its employee, a Mr. Picou, created an unsafe workplace when Picou refused to order the crane operator to lift the iron and pressured LeBlanc to get his work done, thereby forcing him to pick up the iron unassisted.
Mobile argues that nothing recounted in the LeBlanc depositions amounts to operational control over the Dynamic employees and that Mobile had no duty to help a Dynamic employee do his job. The failure of Picou to order the crane operator to assist the Dynamic employees did not create an unsafe workplace or cause LeBlanc to lift the iron without adequate assistance.
We agree with Mobile. Based on the depositions given by LeBlanc on February 19, 1990 and January 23, 1991, no action on the part of Mobile created an unsafe workplace or forced LeBlanc to pick up the iron without adequate assistance.
Allegedly, Picou told the Dynamic employees to get to work and apparently may have called the welder, Dupre, a lazy bum. In another exchange recounted by LeBlanc in the January deposition, Picou in essence told the Dynamic crew to get their work done or go home. In the earlier deposition in February of 1990, no such exchange with Picou was remembered.
Picking up pieces of angle iron, whose weight is within the knowledge of LeBlanc and the Dynamic's employees, is a routine part of LeBlanc's duties. Picou's direction to the Dynamic employees to get their work done, work that included picking up the angle iron, did not translate into the type of operational control necessary to impose personal negligence on Mobile nor did the order to get to work result in express or implied authorization by Mobile of an unsafe work practice of picking up heavy iron without adequate assistance. See generally Williams v. Gervais F. Favrot Co., 499 So.2d 623, 625-26 (La.App. 4th Cir.1986), writ denied, 503 So.2d 19 (La.1987).
No one disputes that Dynamic is an independent contractor or implies that Mobile was LeBlanc's actual or statutory employer. The fact that Picou was in the area and could see LeBlanc picking up the iron did not place a burden on Mobile to assist the Dynamic employees in their duties. When Picou was allegedly asked by a Dynamic supervisor to make the crane operator help, Picou replied that the crane was busy with another crew. Nothing in the conversation related by LeBlanc leads to the conclusion that Mobile, by telling a Dynamic supervisor that the crane was busy with another crew, created an unsafe workplace, authorized an unsafe work practice, or caused LeBlanc to lift the iron without adequate help.
LeBlanc received his orders from Dynamic personnel. A Dynamic supervisor also told him to get to work or the job could be lost. LeBlanc stated in deposition that the various welding companies were vying for continued work on the project and that not all of the companies would be needed. A Dynamic supervisor told LeBlanc that the iron had to be cut and prepared for use by the end of the night shift. Admittedly, six hours was lost in just deciding how to do the job and LeBlanc was concerned that the job would not be finished on time. After receiving help from the Dynamic supervisor, when LeBlanc asked the first time, apparently LeBlanc did not go back and request help again. LeBlanc stated that he picked up the six foot pieces by himself because Dupre, the Dynamic welder, refused to help, the other twenty or more Dynamic employees seemed busy, and he knew the job had to be finished by the end of the shift.
After Mobile submitted the LeBlanc depositions and affidavits by Mobile employees that supported the motion for summary judgment, the burden shifted to LeBlanc to present evidence that a material fact was still at issue, and Mobile was not entitled to judgment as a matter of law. LeBlanc submitted an affidavit just before the hearing on the motion for summary judgment. In brief, LeBlanc states that the affidavit is a recap of the depositions, however, the affidavit, dated March 17, 1992, contains substantially revised testimony and material contradictions when compared to the two LeBlanc depositions.
*21 Conflicts in testimony are generally for the jury to resolve. However, material and substantial contradictions or revisions in testimony in an affidavit by a party, after two previous depositions, should not be allowed to create an issue of material fact, where no issue existed before, without some explanation or support for the contrary statements. Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir.1988); Kaseta v. Northwestern Agency of Great Falls, 252 Mont. 135, 827 P.2d 804, 806 (1992). We did not consider any statements that were completely contradicted by the deposition.
After a review of the documents submitted for the motion for summary judgment, we find that no genuine issue of material fact remained and Mobile was entitled to summary judgment. The grant of summary judgment in favor of Mobile is affirmed.

DYNAMIC SUMMARY JUDGMENT
Plaintiff argues that he was assigned to a repair job that utilized several vessels all involved in the mission of the fleet, i.e., the repair of the compressor station. During this job, plaintiff argues that he was exposed to all the perils of the sea. For these reasons, he believes that a question was presented for the jury on the issue of seaman status.
Dynamic argues that it neither owned nor controlled any vessels on the project, that plaintiff was not permanently assigned to any vessel or fleet of vessels, that he was never promised a permanent job, and that plaintiff, when his entire work history is reviewed, did not spend a substantial part of his work time on vessels. Therefore, plaintiff cannot be a Jones Act seaman under the undisputed facts.

SEAMAN STATUS
In Offshore Company v. Robison, 266 F.2d 769, 779 (5th Cir.1959), the federal court of appeals announced the standard for determination of seaman status. The federal fifth circuit held that summary judgment for the defendant
on the ground that the plaintiff lacked seaman's status was improper and that there was an evidentiary basis to submit that question to the jury
`(1) if there is evidence that the injured workman was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.'
Ardoin v. J. Ray McDermott & Co., 641 F.2d 277, 280-81 (5th Cir.1981), citing Robison, 266 F.2d at 779.
The terms "seaman" and "vessel" have such varying meanings as interpreted by the courts in Jones Act cases
that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts.
Robison, 266 F.2d at 779-80. Even when the claim of seaman status is a marginal one, the question is for the jury. However, summary judgment "is proper in cases where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about these facts." Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240, 244 (5th Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984).
Expansion of the terms `seaman' and `vessel' are consistent with the liberal construction of the [a]ct that has characterized it from the beginning and is consistent with its purposes. Within broad limits of what is reasonable, Congress has seen fit to allow juries to decide who are seaman under the Jones Act. There is nothing in the act to indicate that Congress intended the law to apply only to conventional members of a ship's company. The absence of any legislative restriction has enabled the law to develop naturally along with the *22 development of unconventional vessels, such as the strange-looking specialized watercraft designed for oil operations offshore and in the shallow coastal waters of the Gulf of Mexico. Many of the Jones Act seamen on these vessels share the same marine risks to which all aboard are subject.
Robison, 266 F.2d at 780.
In Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986), the court of appeals considered the first prong of the Robison test. The court found that "Robison requires evidence that the worker was `assigned permanently to ... or performed a substantial portion of his work on the vessel.' This test is, of course, disjunctive, and permits a worker to be a crew member if he does substantial work on the vessel even though his assignment to it is not `permanent.'" Barrett, 781 F.2d at 1073, citing Davis v. Hill Engineering, Inc., 549 F.2d 314, 326 (5th Cir. 1977), as an example.
The question whether a claimant was `permanently' assigned to a vessel is, thus, `more frequently an analytical starting point than a self-executing formula.' Brown v. ITT Rayonier, Inc., 497 F.2d 234, 236-37 (5th Cir.1974). The `permanency' requirement is, we think, best understood as indicating that in order to be deemed a `seaman' within the meaning of the Jones Act `a claimant [must] have more than a transitory connection' with a vessel or a [fleet] of vessels. Davis v. Hill Engineering, Inc., 549 F.2d 314, 326 (5th Cir. 1977).
Ardoin, 641 F.2d at 281. "By fleet we mean an identifiable group of vessels acting together or under one control." (citation omitted) Barrett, 781 F.2d at 1074.
"[I]n order to prove `substantial work' equivalent to permanent assignment `it must be shown that [the claimant] performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity.'" (citation omitted) Barrett, 781 F.2d at 1073-74. The relationship with the vessel must be one "`that is substantial in point and time and not merely spasmodic.'" (citation omitted) Barrett, 781 F.2d at 1074.
A problem arose over workers who were periodically assigned by land-based employers to jobs on land and on vessels. The courts did not want to include within the definition of "seaman" or "member of a crew" a primarily land-based worker. Barrett formulated a test for such a worker whose duties are divided between land, or fixed platforms, and vessels.
[I]f the employee's regularly assigned duties require him to divide his time between vessel and land ... his status as a crew member is determined `in the context of his entire employment' with his current employer. (citation omitted) This is not an inflexible requirement, however, and does not preclude assessment of the extent of the employee's work aboard a vessel over a shorter time period if the employee's permanent job assignment during his term of employment has changed. If the plaintiff receives a new work assignment before his accident in which either his essential duties or his work location is permanently changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job.
Barrett, 781 F.2d at 1075-76.
The word "permanent" in the change of duties or change of location portion of the test for workers with divided duties must, of course, still be defined as "`more than a transitory connection' with a vessel or a specific group of vessels." (citation omitted) Barrett, 781 F.2d at 1074. To define "permanent" more stringently in looking at the substantial work portion of the Barrett test than the permanent assignment portion would be inconsistent with the Robison/Barrett analysis.
The Louisiana Supreme Court, in Folse v. Western Atlas Intern., Inc., 593 So.2d 341, 342 (La.1992), cited Barrett and noted that a more or less permanent attachment to a vessel or fleet of vessels was a requirement for seaman status. "This requirement was designed to distinguish between transitory, land-based employees and those working aboard a vessel for a voyage." Folse, 593 So.2d at 343. However, the court questioned the future application of the permanency requirement *23 after the United States Supreme Court opinion in Southwest Marine, Inc. v. Gizoni, ___ U.S. ___, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). Id.; See Folse, 593 So.2d at 344 (Dennis, J., concurring). In Gizoni, the Court held that a rigging foreman, who rode floating platforms only during working hours, was not excluded from seaman status as a matter of law and that the question was for the jury.
The court in Folse found that (1) although the vessels on which Folse worked were not owned or chartered by his employer, Folse, like the plaintiff in Bertrand, could not be deprived of seaman status merely by his employer's decision to use the customer's boats, and that (2) although Folse's assignment was not permanent, it was less transient than the river pilot in Bach v. Trident Steamship Co., Inc., 920 F.2d 322 (5th Cir.), vacated, ___ U.S. ___, 111 S.Ct. 2253, 114 L.Ed.2d 706, reinstated, 947 F.2d 1290 (5th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1996, 118 L.Ed.2d 592 (1992), who was found not to be a seaman. Therefore, the Folse court held that plaintiff presented a question for the trier of fact. Folse, 593 So.2d at 343.
The first circuit, in Theriot v. McDermott, Inc., 611 So.2d 129, 134-35 (La.App. 1st Cir. 1992), writ denied, 615 So.2d 342 (La.1993), found that a welder, employed by Venture Associates and assigned by his employer to a new job working for McDermott at a new location, was a seaman. The court rejected the argument that permanency of assignment was an essential element, and looked at the second half of the Barrett test, substantiality of work on the vessel. Theriot, 611 So.2d at 133-35. Although the change of location was only for the duration of the new assignment, the change of location was of sufficient permanency to allow seaman status to be determined on the basis of his activities in the new job. Theriot, 611 So.2d at 135.
The welder in Theriot looks much like the welder's helper in our case. Theriot was sent to a new location to work on a new contract. The welding crew ate and slept on a derrick barge where the welding equipment was also stored. The crew worked on the derrick barge, material barge, or platform. Theriot believed that he spent about 50% of his time on the derrick barge. Theriot, 611 So.2d at 135.
The court reviewed the work time spent on the new job and found that at the time of the accident, Theriot had spent 50% of his time on a vessel or fleet of vessels. Because defendants had conceded that Theriot, had contributed to the mission of the vessel, abandonment of an off-shore platform, the court found Theriot to be a Jones Act seaman. Theriot, 611 So.2d at 133-35.
Here, we are testing a summary judgment in favor of defendant, Dynamic, and trying to determine whether an evidentiary basis exists for submission of the question to the trier of fact. It appears from the depositions and affidavits of the various parties that "certain `facts' are variable or uncertain or indefinite or that from established or uncontradicted physical or similar facts different inferences may be drawn." Braniff v. Jackson Ave.-Gretna Ferry, Inc., 280 F.2d 523, 526 (5th Cir.1960).
Under the Robison/Barrett analysis as explained in the Louisiana cases of Folse and Theriot, we find that the trier of fact could have made different inferences from the trial court on the motion for summary judgment and found:
(1) that a fleet of vessels was "acting together" to accomplish the mission of the fleet, i.e., to repair the compressor station;
(2) that LeBlanc was assigned to the job and, therefore, to the fleet or to one or more of the material barges upon which he worked, as the worker in Ardoin, 641 F.2d at 281;
(3) that, like Theriot, he was assigned to a new job with a change of location for an indefinite period, but with the possibility of six months work, resulting in a change of location of a permanency sufficient to allow a determination of seaman status based on the activities in the new job, and
(4) that LeBlanc's job was in furtherance of the mission to repair the compressor station.
After a review of the record, we conclude that questions of fact existed and that conflicting *24 inferences could have been made regarding whether LeBlanc had a sufficient connection to a vessel or fleet of vessels in navigation to qualify for seaman status. Therefore, summary judgment in favor of Dynamic was inappropriate.
For the foregoing reasons, the judgment of the trial court in favor of Mobile is affirmed and the judgment in favor of Dynamic is reversed and the case remanded for further proceedings. Costs of the appeal are assessed equally to Dynamic, Union, and plaintiff, David LeBlanc.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Several other defendants were named and later dismissed. Mr. LeBlanc filed a separate worker's compensation suit against Dynamic, which is not before this court.
[2] Mr. LeBlanc testified only by way of deposition and affidavit.
[3] In Mr. LeBlanc's affidavit, dated March 17, 1992, he attested that Dynamic promised LeBlanc fourteen months of work on the site. No explanation for this obviously contradictory statement made in the affidavit was given at the hearing on the motion for summary judgment or in briefs to this court. Although ambiguities and conflicts in testimony are generally matters for the jury, a party's sudden and unexplained revision of his testimony alone should not be used to create an issue of material fact where none existed before. Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir.1988); Kaseta v. Northwestern Agency of Great Falls, 252 Mont. 135, 827 P.2d 804, 806 (1992). We do not believe that the unexplained contradiction in the affidavit would be enough standing alone to create a genuine issue of material fact and we did not consider the alleged promise of fourteen months of work in our analysis of this case. However, in deposition, the plaintiff testified that the job could have been steady work for him of four to six months. Dynamic attested that plaintiff was never promised a specific number of months or a permanent job. This dispute was considered in our attempt to determine whether the question of seaman status should have gone to the trier of fact.